Walter FRAZIER, Appellant,

v.

CENTER MOTORS, INC., et
al., Appellees.

FRANKLIN INVESTMENT CO.,
INC., Appellant,

v.

Walter FRAZIER, Appellee.

Nos. 79–679, 79–742.

District of Columbia Court of Appeals.

Argued Feb. 14, 1980.

Decided May 19, 1980.

Russell B. Kinner, Washington, D.C., with whom Roger K. Davis, Washington, D.C., was on the brief, for Frazier.

Bernard D. Lipton, Silver Spring, Md., for appellee–cross appellant Franklin Inv. Co., Inc., with whom Stanley M. Karlin, Silver Spring, Md., was on the brief, for appellee Center Motors, Inc.

Before NEWMAN, Chief Judge, and GALLAGHER, and PRYOR, Associate Judges.

PRYOR, Associate Judge:

Walter Frazier brought an action against Center Motors, Inc., a used car dealer, and Franklin Investment Co., Inc., a finance company which financed the sale,[1] for alleged violations of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, as implemented by the Federal Reserve Board's "Regulation Z", 12 C.F.R. § 226 (1977), in connection with the sale and financing of a used car in November 1972. Following extensive pretrial activity, Franklin filed a motion to dismiss Frazier's claim for failure to prosecute pursuant to Super.Ct.Civ.R. 41(b). Frazier filed a motion for partial summary judgment. Franklin's motion was denied. Frazier was granted a partial summary judgment against Center and Franklin on his Truth in Lending Claims. The judgment awarded Frazier $464.84, plus $250.00 attorney's fees. Frazier subsequently filed a motion to alter or amend this judgment, seeking the maximum Truth in Lending award of $1,000.00. Franklin renewed its motion to dismiss. Both motions were denied. From these rulings, Franklin and Frazier appeal. Frazier attacks the adequacy of the award. Franklin cross appeals attacking the denial of its motion to dismiss. After a review of the record, we

---

1. Originally a second finance company, Key Finance, was also named as a party defendant in this action. By Order of July 28, 1976, Key Finance was dropped as a party on motion of Mr. Frazier. (C.A. No. 10796–73, May 9, 1976.)

affirm the trial court's ruling in declining to dismiss Frazier's complaint, and also remand the judgment in his favor for further consideration of the award of the attorney's fees.

## I

On November 27, 1972, Frazier purchased a used car from Center Motors (Center). By making a $50.00 downpayment, Frazier was able to take possession of the car. He signed a "Conditional Sales Contract" providing that the outstanding balance of the sales price, $1,145.50, was to be paid in a lump sum, on the following day. By the terms of the contract, Center was denominated as the "lender" of the outstanding balance, and Franklin Investment Co., (Franklin), a longstanding business associate of Center, as the "assignee" of the contract. As part of a continuing business practice, Franklin purchased, at a discount, a substantial percentage of Center's loan contracts. Franklin provided Center with the conditional sales contract forms it used, and did the credit investigation of Center's credit customers. Center did no investigation of its own, but relied solely on the findings and recommendation of Franklin.

At the request of Center, on November 28, 1972, Frazier returned to Center and made an additional $302.08 payment on the purchase price of the car. On November 29, 1972, Center informed Frazier that his credit application had been rejected by Franklin and that he would need a cosigner. Frazier complied and was accepted as a debtor.

On December 12, 1972, Bankers Mutual Insurance Company issued an insurance policy on the car, which was obtained by Franklin. The policy obligated Frazier to pay a yearly premium of $287.50. Franklin was named as the loss payee. The policy was of one year's duration, effective December 12, 1972. Frazier did not become aware of the policy, however, until December 19, 1972.

On December 19, 1972, Center substituted a new conditional sales contract for the original one. By the terms of this contract, Frazier was to pay 18 monthly installments of $70.30. A disclosure statement provided Frazier on this date showed additionally that Frazier was to pay a $287.50 charge for motor vehicle physical damage insurance, and a "finance charge" of $232.42. In smaller print, below the listed charges, was a statement of the customer's right to obtain physical damage insurance through any person of his choice.

On the day the new contract was executed, December 19, 1972, Center assigned its rights under the contract to Franklin, in exchange for $720.50 of the $745.50 principal due. The $25.00 difference was placed in a reserve fund held by Franklin for the benefit of Center.

## II

■ ■ The issue presented by a motion to dismiss for failure to prosecute is generally directed to the sound discretion of the court. The exercise of this discretion has, however, been defined in a number of decisions. *See, e.g., Garces v. Bradley*, D.C. App., 299 A.2d 142 (1973); *Sitwell v. Government Employees Insurance Co.*, D.C. App., 263 A.2d 262, 263 (1970); *Shakesnider v. Rosenfeld*, D.C.Mun.App., 144 A.2d 106, 107 (1958). The courts have generally looked to factors which include: length of delay; reasons for the delay; and any prejudice as the result of the delay. *See Gaertner v. Eugene Leland Memorial Hospital*, D.C.App., 248 A.2d 817, 819 (1968); *Christian v. Bruno*, D.C.App., 247 A.2d 54, 58 (1968). This court will only disturb the trial court's decision in instances of clear abuse. *See Beckwith v. Beckwith*, D.C.App., 379 A.2d 955, 959 (1978). We remain mindful that a dismissal under Super.Ct.Civ.R. 41(b) is a drastic remedy, and should only be granted sparingly. *Id.*, at 959. We repeatedly emphasize the desirability of assuring the right to be heard on the merits. *Bennings Associates v. Joseph M. Zamoiski Co.*, D.C.App., 379 A.2d 1171, 1173 (1973). Our evaluation of the present situation is guided by these principles.

Frazier's complaint against Center Motors, Franklin Investment, and Key Fi-

nance[2] for damages for violation of the disclosure provisions of the Truth in Lending Act was filed on December 19, 1973, one year from the date the cause of action accrued.[3] There followed a period, which continued through 1974, in which extensive pretrial activity took place: interrogatories, depositions, affidavits, and several pretrial motions were filed. The case, originally scheduled for oral argument on August 29, 1974, was removed from the trial calendar by the court, sua sponte, due to scheduling conflicts. During the two subsequent months, September and October 1974, discovery continued. From October 1974 to April 1976, no further action was taken by Frazier to move the case to resolution. This lull Frazier attributed in part to the fact that tape recordings of depositions by key witnesses were stolen from the office of Frazier's attorney and not made available by the attorney for Center and Franklin until May 1975, despite a request for the same, seventeen months earlier. Additionally, Frazier attributes the inactivity to the fact that a case involving essentially the same facts and issues was pending against Center and Franklin in the United States District Court for District of Columbia, *Price v. Franklin Investment Co., Inc., and Center Motors, Inc.,* Civ.A. No. 74–1610 (D.D.C. Nov. 3, 1975),[4] and that counsel awaited the disposition of that case as he believed that it would dispose of the issues in this case and warrant the granting of a summary judgment. In April 1976, five months after the decision in *Price,* Frazier's counsel moved for partial summary judgment, and on the same day, filed a motion to dismiss Key Finance Corp. as a party. Frazier's motion for partial summary judgment was denied. The motion to dismiss Key Finance as a party was granted. In June 1976, Center Motors and Franklin Investment made a motion to dismiss Frazier's claim for failure to prosecute. Follow-

ing argument on the motion, in July 1976, the motion was denied.

During the next five months, further pretrial activity took place, ending in December 1976. In March 1978, Frazier requested certification to a single judge, and in June 1978, at a pretrial conference, trial was set for May 1979. In July 1978, after the trial date had been set, Center and Franklin renewed their motion to dismiss. Again it was denied. Frazier renewed his motion for partial summary judgment in August 1978. The motion was granted. Further motions were made by the parties during August and September 1978. All were denied. In October 1978, the trial judge issued an Order clarifying his Order of August 1978, stating that the Order of August 1978 was to be a disposition of all the truth in lending issues and that it constituted a final judgment on the claims. Appeals were noted.

■ Even though substantial periods of time elapsed without any action being taken by the parties, we do not conclude that the delays were inexcusable or that prejudice resulted therefrom. Frazier proffers reasonable explanations for the periods of inactivity. Additionally, we note that during the periods of inactivity, the *Price* case, *supra,* kept the issues alive. Further, we find from a fair reading of the record, that Franklin and Center contributed to some of the delay in this case by failing to make timely responses to appellant's requests for documents, etc.

In light of the above, we do not find that the trial court erred by denying the motion to dismiss Frazier's action for failure to prosecute.

### III

We are also asked to review the amount of damages awarded to Frazier under the Truth in Lending Act. This is a matter of

---

2. *See* note 1, *supra.*

3. 15 U.S.C.A. 1640(e) provides the statute of limitations for Truth in Lending actions: all actions must be brought within one year.

4. In 1978, the United States Court of Appeals for the District of Columbia reversed the District Court's decision to grant judgment only against Center Motors in *Price v. Franklin Inv. Co. Inc.,* 187 U.S.App.D.C. 383, 574 F.2d 594 (1978), and held Franklin to also be liable.

statutory construction, as the Act, 15 U.S.C. § 1601, *et seq.* prescribes the method for determining the amount of damages to be awarded to any successful claimant under the Act.

The pivotal language of the Act is found in § 1640(a):

(a) Failure to disclose.

Except as otherwise provided in this section, any creditor who fails in connection with any consumer credit transaction to disclose to any person any information required under this part to be disclosed to that person is liable to that person in an amount equal to the sum of

(1) twice the amount of the finance charge in connection with the transaction, except that the liability under this paragraph shall not be less than $100 nor greater than $1,000; and

(2) in the case of any successful action to enforce the foregoing liability, the costs of the action together with a reasonable attorney's fee as determined by the court.

To reach its conclusion that Frazier was entitled to $464.84, the trial court looked at the disclosure statement provided by Center and Franklin which indicated that the "finance charge" was $232.42, and relying on (a)(1) above, doubled that amount. Franklin and Center proffer that this was the appropriate procedure. To the contrary, Frazier urges that the amount, $232.42, does not represent the total "finance charge" and it was, therefore, error for the trial court to merely double that amount in calculating the award.

The "Truth in Lending Act"[5] was promulgated in 1968 at a time when Congress had before it overwhelming evidence of abuses by creditors of debtors in consumer commercial credit transactions. The abuses were perpetuated by uninformed utilization of credit by consumers. H.R.Rep. No. 1040, 90th Cong., 1st Sess. 9, *reprinted in* [1968] 2 U.S. Code Cong. & Admin. News, pp. 1964–66. Credit terms were deceptively hidden

in consumer credit contracts, or stated in a confusing manner. *Id.* Thus, the Act was a specific response to this problem. The Act evidences a transition in Congress from the previous policy of caveat emptor to caveat vendor. *See* Beardsley, *Truth in Lending Act: A Summary of the Consumer Remedies,* 22 S.D.L.Rev. 332 (1977). The purpose of the Act is stated in section 1601:

The Congress finds that economic stabilization would be enhanced and the competition among the various financial institutions and other firms . . . would be strengthened by the informed use of credit. The informed use of credit results from an awareness of the cost thereof by consumers. It is the purpose of this title . . . to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices.

To accomplish its stated purpose, Congress delegated broad authority to the Federal Reserve Board to promulgate regulations necessary to render the Act effective, and also to monitor its operation. *See Mourning v. Family Publications Service, Inc.,* 411 U.S. 356, 365–66, 93 S.Ct. 1652, 1658–1659, 36 L.Ed.2d 318 (1973). In addition to proscribing conduct on the part of merchants which amounts to a failure to adequately disclose credit terms, remedies were provided so that merchants would be aware of the consequences of violating the Act, and credit consumers would be aware of available recourse when a creditor violates the Act.

The Act provides an aggrieved consumer with two remedies.[6] We are here concerned with the civil penalty found in § 1640 of the Act. A successful claimant under § 1640 may recover from the creditor twice the amount of the finance charge (no

---

**5.** Consumer Credit Protection Act, Title I, 15 U.S.C. §§ 1601–1665 (1968).

**6.** 1. Recission of the consumer credit transactions, 15 U.S.C. § 1635 (1968); and

2. Civil penalties, *id.,* at § 1640.

less than $100.00, not to exceed $1,000), 15 U.S.C. § 1640(a)(1) and reasonable attorney's fees, 15 U.S.C. § 1640(a)(2).

■ With the award of damages being based on the "finance charge," Congress foresaw the possibility of creditors attempting to hide the cost of credit in the price of the goods, by inflating prices and claiming that there was no "finance charge", *see Mourning, supra,* at 366–367, 93 S.Ct. at 1659–1660, or other such diversionary tactics. In an attempt to minimize the likelihood of a creditor succeeding in "burying" "finance charges," section 226.4(a) was enacted [7] to provide a means for determining the "finance charge." All charges incident to, or a condition of the credit, are "finance charges." Landers, *Truth in Lending: Closed End Credit,* 24 The Practical Lawyer 13, 22 (1978). Included are all charges that would not be imposed but for the existence of a credit transaction. *Id.*[8] The penalty section of the Act is to be construed liberally, keeping ever mindful that Congress could not draft an Act explicitly covering every conceivable future problem. *Id. See, e. g., Eby Realty v. Reb Realty,* 495 F.2d 646 (9th Cir. 1974). *See also, Gardner and North Roofing & Siding Corp. v. Board of Governors of Federal Reserve System,* 150 U.S.App.D.C. 329, 332, 464 F.2d 838, 841 (1972) stating that the Act must be construed broadly.

The Act provides a means for determining what the "finance charge" is. Section 1605(a) requires that the "finance charge" include all sums "payable directly or indirectly by the person to whom credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit . . ." 15 U.S.C. § 1605(a); 12 C.F.R. § 226.4(a). The types of charges referred to include:

(1) Interest, time price differential, and any amount payable under a discount or other system of additional charges.

(2) Service, transaction, activity, or carrying charge.

(3) Loan fee, points, finder's fee, or similar charge.

(4) Fee for an appraisal, investigation, or credit report.

(5) Charges or premiums for credit life, accident, health, or loss of income insurance, written in connection with any credit transaction unless

(i) The insurance coverage is not required by the creditor and this fact is clearly and conspicuously disclosed in writing to the customer; and

(ii) Any customer desiring such insurance coverage gives specific dated and separately signed affirmative written indication of such desire after receiving written disclosure to him of the cost of such insurance.

(6) Charges or premiums for insurance, written in connection with any credit transaction, against loss of or damage to property or against liability arising out of the ownership or use of property, unless a clear, conspicuous, and specific statement in writing is furnished by the creditor to the customer setting forth the cost of the insurance if obtained from or through the creditor and stating that the customer may choose the person through which the insurance is to be obtained.

(7) Premium or other charge for any other guarantee or insurance protecting the creditor against the customer's default or other credit loss.

(8) Any charge imposed by a creditor upon another creditor for purchasing or accepting an obligation of a customer if the customer is required to pay any part of that charge in cash, as an addition to the obligation, or as a deduction from the proceeds of the obligation. [12 C.F.R. § 226.4(a) (footnotes omitted).]

Frazier proffers that consistent with 12 C.F.R. § 226.4(a)(6) above, the trial court should have included the $287.50 insurance premium in its calculation of the "finance charge." The insurance policy was obtained by Franklin for Frazier in connection

---

7. 12 C.F.R. 226.4(a) (1969) as amended.

8. *See also,* Landers, *The Scope of Coverage of the Truth in Lending Act,* 1976 Am. B. Foundation Research J. 565.

with the credit transaction and was not properly disclosed. The insurance coverage was obtained not at the customer's request, but by Franklin, as per its usual course of dealing with credit consumers. When Frazier did receive a statement disclosing the fact of the insurance and the premiums, the statement failed to adequately apprise appellant of his right to choose the person through which his insurance could be obtained.

Frazier further cites as error the failure of the court to include the $25.00 retained by Franklin as a payment to a reserve fund for Center Motors, in its calculation of the "finance charge." Frazier bases this contention on section (8) above, which provides that any charge imposed by a creditor upon another creditor for purchasing or accepting an obligation of a customer, must be included in the "finance charge" if the customer is required to pay any part of that charge. To buttress his position, Frazier points out that it was the regular practice of Franklin to deduct $25.00 from the face value of each contract it purchased from Center. The $25.00 was placed in an established reserve fund from which Franklin was permitted to draw at the request of Center Motors to offset losses incurred by Center in connection with its obligation to Franklin. Thus, in the transaction between Frazier, Center, and Franklin, Frazier had an outstanding balance of $745.50 on the purchase of the car. Franklin paid Center $720.50 of this total amount. The remaining $25.00 was placed in reserve.

This court is aware of no other reported Truth in Lending case in which the instant factual situation was at issue. However, the broad array of charges which have been found to be "finance charges,"[9] coupled with the legislative history of the Act, lead us to conclude that the $287.50 insurance premium constitutes a "finance charge." The charge is inextricably intertwined with the credit transaction and is incident to the transaction. "Regulation Z" requires that disclosure of all charges incident to a credit transaction must be made "before the transaction is consummated." A transaction is consummated at the time the contractual relation is created between the parties. 12 C.F.R. § 226.2(kk). In the instant case, Franklin obtained the policy on the car without discussing the matter of insurance with Frazier. Bankers Mutual issued the policy one week before Frazier became aware that the policy had been issued. When Frazier did become aware that the policy was in existence, and that it purported to obligate him to pay $287.50 per year for the coverage, it was by way of a listed charge on the disclosure statement. While the disclosure statement contained a statement of the customer's right to obtain physical damage insurance through any person of his choice, this statement was in fine print in the agreement.[10]

We find that the insurance cost fails to comport with the disclosure Congress intended. The issuance of the insurance pre-

9. *See, e. g., Carney v. Worthmore Furniture,* 561 F.2d 1100 (4th Cir. 1977), which held that where virtually all of a merchant's sales were credit transactions covered by the Truth in Lending Act, a required fee for a service policy, the cost of which was added to the sales price, constituted a finance charge; *Campbell v. Liberty Fin. Planning,* 422 F.Supp. 1386 (D.Neb. 1976) concluded that where C, a credit consumer was required to pay the $100.00 balance of his mother's loan as a prerequisite to his acquiring a loan, the $100.00 was a "finance charge"; *Meyers v. Clearview Dodge Sales, Inc.,* 384 F.Supp. 722 (E.D.La.1974), held that the $15.00 charge for "tags, title and fees" added to the price of a car purchased on credit, which was not listed on the disclosure form, or included in the finance charge, was in fact a "finance charge."

10. While the trial court did not make a finding as to whether or not the disclosure statement was sufficiently conspicuous, this court is as competent to interpret a contract as a trial court, and, therefore, it is appropriate for us to make this type of finding. *See, In re Wiley's Estate,* D.C.App., 331 A.2d 343 (1975). When the findings of a trial court are based entirely on the wording of a written instrument and not on oral testimony, it is the duty of the appellate court to review de novo the interpretation placed on such instrument. *See also, Sun Indem. Co. of New York v. American Univ.,* 58 App.D.C. 184, 26 F.2d 556 (1928) (interpretation of written instruments constitutes a question of law and is reviewable on appeal.)

mium one week prior to Frazier's becoming aware of the same, cannot be said to have allowed the customer to make an informed choice. The $287.50 should, therefore, have been calculated into the "finance charge."

As the inclusion of the insurance premium in the "finance charge," will put Frazier's recovery at the maximum allowed by statute,[11] we do not reach the issue of whether the $25.00 retained in a reserve account by Franklin, was also a "finance charge" within the meaning of the statute.

## IV

Finally, Frazier challenges the award of attorney's fees as being inadequate and determined without regard to precedent.

■■■ Section 1640(a)(2) of the Truth in Lending Act provides that, "in the case of any successful action to enforce the foregoing liability [the claimant may recover] the costs of the action together with a reasonable attorney's fee as determined by the court." Section 1640(a)(2) leaves the determination of what fee is "reasonable" to the discretion of the court. Relying on a Fifth Circuit opinion,[12] in *Evans v. Sheraton Park Hotel*, 164 U.S.App.D.C. 86, 96–97, 503 F.2d 177, 187–188 (1974) the District of Columbia Circuit set forth guidelines to assist the trial court in arriving at reasonable and just compensation:

1. Time and labor required.
2. The novelty and difficulty of the question.
3. The skill requisite to perform the legal service properly.
4. The preclusion of other employment by the attorney due to acceptance of the case.
5. The customary fee.
6. Whether the fee is fixed or contingent.

7. Time limitations imposed by the client or the circumstances.
8. The amount involved and the results obtained.
9. The experience, reputation and ability of the attorneys.
10. The "undesirability" of the case.
11. The nature and length of the professional relationship with the client.
12. Awards in similar cases.

We think the guidelines sound, and hereby adopt them as a means of assisting courts in determining "reasonable" attorney's fees in Truth in Lending cases.

■■■ While it is not required that the court write an elaborate statement in this regard, in the instant case, the trial court not only failed to elucidate any factors for its decision, but deprived Frazier of the opportunity to submit *any* material specifying the time devoted to the case and a reasonable rate of hourly compensation. Even if we had not adopted the standards in *Evans v. Sheraton Park Hotel, supra,* existing case law provided that such information should have been considered. *See Freeman v. Ryan*, 133 U.S.App.D.C. 1, 408 F.2d 1204, 1205 n.1 (1968); *Schmidt v. McCarthy*, 125 U.S.App.D.C. 131, 369 F.2d 176 (1966).[13]

For the aforestated reasons, we affirm the trial court's ruling denying Franklin's motion to dismiss Frazier's case for failure to prosecute; reverse with respect to the "finance charge" ordering that appellant be awarded the maximum recovery allowed under the Act; and remand with respect to the question of reasonable attorney's fees.

*Affirmed in part and reversed in part.*

Before NEWMAN, Chief Judge, GALLAGHER, Associate Judge,* and PRYOR, Associate Judge.

11. Section 1640(a)(1) of the Act provides that liability of a merchant for failure to disclose, shall not be greater than $1,000.00.

12. *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974).

13. We note that fees to successful claimants under the Truth in Lending Act are not to be denied or decreased because the claimant is not required to pay because counsel is a legal aid society. *See Sellers v. Wollman*, 510 F.2d 119, 123 (5th Cir. 1975).

* GALLAGHER, Associate Judge, dissents from this order.

## ORDER

PER CURIAM.

On consideration of the motion of appellant in No. 79–679 to award him a judgment of $1,000, plus 6% interest from August 8, 1978 and to publish the credit sale disclosure statement as an appendix to the opinion of this court, it is

ORDERED the credit sale disclosure statement shall be published as an appendix of this court's opinion of May 19, 1980. It is

FURTHER ORDERED that judgment shall be awarded to Walter Frazier in the Superior Court in the amount of $1,000, plus interest from the date of August 8, 1978. The clerk is directed to transmit a certified copy of this order as a part of the mandate.