## HAMPTON COURTS TENANTS ASSOCIATION, Petitioner,

v.

## DISTRICT OF COLUMBIA RENTAL HOUSING COMMISSION, Respondent.

### William C. Smith & Co., Inc., Intervenor.

### No. 90–1057.

District of Columbia Court of Appeals.

Argued June 11, 1991.

Decided Nov. 21, 1991.

James E. McCollum, Jr., Washington, D.C., for petitioner.

John Payton, Acting Corp. Counsel at the time the statement was filed, Charles L. Reischel, Deputy Corp. Counsel, and Lutz Alexander Prager, Assistant Deputy Corp. Counsel, Washington, D.C., filed a statement in lieu of brief, for respondent.

Joanne Sgro, Washington, D.C., for intervenor.

Before ROGERS, Chief Judge, and TERRY and STEADMAN, Associate Judges.

STEADMAN, Associate Judge:

This case involves the determination of the amount of attorney's fees to be awarded to the prevailing tenants' association in a dispute under the Rental Housing Act, D.C.Code § 45-2501 *et seq.* (1990). The Rental Housing Commission cut back the $20,968.75 sought by the tenants' counsel to $5,125.00, by reducing both the claimed hourly rate and the number of claimed compensable hours. We affirm.

### I—*The Facts*

This litigation originated in a landlord-initiated petition for an increase in rents due to capital improvements, and is before us for the second time. The underlying facts and procedural history are fully set forth in the first appeal. *Hampton Courts v. Rental Housing Comm'n,* 573 A.2d 10 (D.C.1990) ("*Hampton I*"). In brief, the landlord, William C. Smith & Co., Inc., sought an increase in the rent ceiling for the 117 rental units at Hampton Courts. The landlord failed to appear at the hearing before the Rent Administrator, but the Administrator nonetheless granted an increase of $9 per unit per month. In the course of the proceedings, tenants, acting through the Hampton Courts Tenants Association (the "Association"), retained counsel and took an appeal of the adverse decision to the Rental Housing Commission

(the "RHC"). The RHC reversed, ruling that the landlord had the burden of production and persuasion which it failed to meet by nonappearance. The RHC also ruled that it would award the Association attorney's fees.

The landlord did not further contest the substantive ruling on the requested rent increase but did challenge the award of fees through a motion for reconsideration. The RHC granted the motion,[1] ruling that in landlord-initiated actions, tenants could recover fees only if they established that the landlord "had maintained an unreasonable position." In *Hampton I,* the prior appeal to this court, we reversed the RHC on the ground that the *Ungar* presumption[2] of an award of attorney's fees to the prevailing party in rental housing litigation applies to prevailing tenants in landlord-initiated as well as in tenant-initiated proceedings. We therefore remanded for further proceedings on the question of attorney's fees.

On remand, the RHC directed the counsel representing the Association before the RHC[3] to "submit documentation in support of his fee application" and the landlord to "submit any opposition."[4] Several weeks later, the Association's counsel filed such documentation in support of the attorney's fee application.[5] A flurry of motions followed, including an opposition by the land-

---

1. As a result, although the Association's counsel had filed documentation for a specific fee award of $19,718.75, the RHC took no action on the request. See notes 4 and 5, *infra.*

2. In *Ungar v. District of Columbia Rental Housing Comm'n,* 535 A.2d 887, 892 (D.C.1987), we held that the applicable attorney's fees section of the Rental Housing Act, D.C.Code § 45-2592, "creates a presumptive award of attorney's fees to the prevailing party—which may be withheld, in the court's discretion, if the equities indicate otherwise." Section 45-2592 provides, in pertinent part: "The Rent Administrator, Rental Housing Commission, or a court of competent jurisdiction may award reasonable attorney's fees to the prevailing party in any action under this chapter...."

3. The Association has been represented on the two appeals to this court by a different attorney than before the RHC.

4. We find no merit in the Association's argument that the RHC erroneously permitted the

landlord to challenge the amount of fees requested. It asserts that the landlord in the proceedings leading to *Hampton I* failed to preserve its right to challenge the amount of fees (as opposed to the award of any fees at all). However, the record demonstrates that at the time that the landlord filed its motion for reconsideration of the RHC's original award of attorney's fees in *Hampton I,* it also filed a motion for an extension of time within which to challenge the amount of the requested fees. In the latter motion, the landlord pointed out that if the RHC granted the motion for reconsideration, it would obviate the need for further briefing and a decision on the amount of the fee. It thus preserved the right to challenge the amount of the requested fee on the remand from *Hampton I.*

5. The filing included the formal motion for attorney's fees and three separate documents in support: (1) the original motion for attorney's fees, dated June 1, 1988, seeking $19,718.75; (2) an affidavit of its trial counsel stating his hourly

lord wherein it contested the reasonableness of the fee amount, a response and motion to strike the opposition by the Association, and a motion to supplement the documentation of attorney's fees.[6] Taking all of these motions and responses into account, the RHC concluded that the hours billed by the Association's counsel were markedly excessive and that there was insufficient information with respect to hourly rates to support the rate requested. In a lengthy and detailed order issued July 20, 1990, the RHC decreased the total number of compensable hours from 167.75 hours to 51.25 hours and the permissible hourly fee from $125 to $100, thereby reducing the over $20,000.00 sought by the Association's counsel to $5,125.00.

## II—The Fee Reduction

The foundational Supreme Court case, *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983), counseled in an oft-cited admonition that "[a] request for attorney's fees should not result in a second major litigation." Therefore, the determination of the reasonableness of attorney's fee amounts is clearly "a matter within the trial judge's discretion." *District of Columbia v. Jerry M.*, 580 A.2d 1270, 1280 (D.C.1990). The same discretionary standard applies to attorney's fees determinations by an administrative agency. *Alexander v. District of Columbia Rental Housing Comm'n*, 542 A.2d 359, 361 (D.C.1988). "This is appropriate in view of the [trial court's or agency's] superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *Hensley, supra*, 461 U.S. at 437, 103 S.Ct. at 1941.

The general procedures for determining the presumptively reasonable "lodestar" amount[7] and then, in exceptional cases, making "upward or downward adjustments thereto," *Henderson v. District of Columbia*, 493 A.2d 982, 999 (D.C.1985), have been expounded a number of times, even as to RHC cases in particular, and need not be set forth again in detail. *See, e.g., Jerry M., supra*, 580 A.2d at 1281 & n. 10; *Alexander, supra*, 542 A.2d at 361–62; *Ungar, supra* note 2, 535 A.2d at 892 (discussing application of factors set forth in *Frazier v. Center Motors, Inc.*, 418 A.2d 1018 (D.C.1980), as "rearticulated and refined" in *District of Columbia v. Hunt*, 525 A.2d 1015 (D.C.1987) (per curiam)).[8] "[T]he fee

---

rate of $125.00, number of hours worked at 167.75, and various other costs sought; and (3) a request for additional attorney's fees, in the amount of $1,250.00, for 10 hours of his work on "post-decision motions" before the RHC (the total number of hours worked stated in the affidavit included these hours). Thus, the total amount of trial level attorney's fees sought in this appeal is $20,968.75. The RHC denied various costs sought by the Association; the denial of such costs does not appear as an issue on appeal. See note 16, *infra*.

6. Attached to the motion to supplement were the Association counsel's resume and three notarized letters in support of his legal abilities. One of the letters, from a former client, noted that counsel had charged her for representation "in an R.A.C.D." case at an hourly rate of $125.00.

7. The "lodestar" amount is the "number of hours reasonably expended on the litigation, excluding any claimed hours that are excessive, redundant, or unnecessary," multiplied by the "reasonable hourly rate for the services rendered, as measured by prevailing market rates in the relevant community for attorneys of similar experience and skill." *Jerry M., supra*, 580 A.2d at 1281.

8. The Court in *Hensley* cautioned that "many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." 461 U.S. at 434 n. 9, 103 S.Ct. at 1940 n. 9 (citing *Copeland v. Marshall*, 205 U.S.App.D.C. 390, 400, 641 F.2d 880, 890 (1980) (en banc)). "We note that ... a precise analysis under *Frazier*, utilizing each of the *Frazier* factors, is not required." *Ungar, supra*, 535 A.2d at 890. The RHC itself, relying on *Copeland, supra*, declared that adjustments to the lodestar should not "play a large part in rental housing litigation," and that "the burden of justifying any deviation from the 'lodestar' rests on the party proposing the deviation" and the ultimate discretion of the Rent Administrator. *Reid v. Sinclair*, TP 11,334 at 19 & n. 7 (RHC Dec. 1, 1988). In that case, relied on heavily in the instant case as stating the standards to be applied specifically in rental housing cases, the RHC discussed several of the more important factors, suggesting to the Rent Administrator on remand that "such adjustments will be highly unusual." *Id.; accord Pennsylvania v. Delaware Valley Citizens' Council*, 478 U.S. 546, 564–65, 106 S.Ct. 3088, 3097–98, 92 L.Ed.2d 439 (1986) ("such modifications are proper only in certain 'rare' and 'exceptional' cases" because strong presumption exists that lodestar represents reasonable fee) (quoting

applicant bears the burden of ... documenting the appropriate hours expended and hourly rates." *Hensley, supra,* 461 U.S. at 437, 103 S.Ct. at 1941; *Jerry M., supra,* 580 A.2d at 1281 ("initial burden of showing that fees claimed are reasonable falls upon the fee claimant").[9] Moreover, as with other agency determinations, the agency decision with respect to the award of attorney's fees is presumed to be correct, and thus the Association bears the burden of demonstrating that the RHC abused its discretion in reducing either compensable hours or hourly rates. *See Cohen v. District of Columbia Rental Housing Comm'n,* 496 A.2d 603, 605 (D.C.1985).

Here, the RHC operated within the proper procedural framework and considered the relevant information before it in reaching its 16 page decision. The question we face is whether the RHC abused its discretion in finding that the Association failed to carry its burden of persuasion in justifying its request,[10] and in setting its ultimate award of attorney's fees in an amount markedly less than that sought by the Association.

---

*Blum v. Stenson,* 465 U.S. 886, 897–901, 104 S.Ct. 1541, 1548–50, 79 L.Ed.2d 891 (1984)).
Here, the record does not reveal that the parties sought either enhancement or diminution after the determination of the lodestar, and thus the order nowhere suggests that the RHC attempted to adjust the lodestar. *See Jerry M., supra,* 580 A.2d at 1281 & n. 10; *National Ass'n of Concerned Veterans v. Sec. of Defense,* 219 U.S.App.D.C. 94, 103 & n. 14, 675 F.2d 1319, 1328 & n. 14 (1982) (hereinafter *Concerned Vets.); Copeland, supra,* 205 U.S.App.D.C. at 402–04, 641 F.2d at 892–94.

9. Once the applicant has met this burden, the burden of proceeding then shifts to the party opposing the fee award, who must submit facts and detailed affidavits to show why the applicant's request should be reduced or denied. Just as the applicant cannot submit a conclusory application, an opposing party does not meet his burden merely by asserting broad challenges to the application. It is not enough ... simply to state, for example, that the hours claimed are excessive and the rates submitted too high.
*Concerned Vets., supra* note 8, 219 U.S.App.D.C. at 112–13, 675 F.2d at 1337–38 (Tamm, J., concurring).

## A—*Number of Hours*

 The RHC may exercise its discretion to decrease the number of compensable hours in the lodestar calculation "[w]here the documentation of hours is inadequate" and to "exclude from [the] initial fee calculation hours that were not 'reasonably expended'" or "that are excessive, redundant, or otherwise unnecessary...." *Hensley, supra,* 461 U.S. at 433–34, 103 S.Ct. at 1939–40. Moreover, the RHC itself, in an opinion intended to designate precisely what it would require in making future attorney fee determinations, stated that "a reasonable number of hours is not necessarily the raw, gross figure" that the firm's documentation depicts, but rather the number of hours an attorney skilled in the specialized field of rental housing would claim in the exercise of "billing judgment." *Reid v. Sinclair, supra* note 8, at 16–17. According to these principles, the RHC did not err here in adjusting the number of compensable hours downward to 51.25 since, within its discretion, it made multiple findings both that counsel provided inadequate substantiation of his hours and that the hours charged were "far in excess of what reasonably skilled counsel expend for similar work in rental housing litigation" according to its extensive "past experience with attorney services in the rental housing area." [11]

10. The RHC did not specify whether it believed that the appellant never carried its initial burden of proceeding on the lodestar determination or that the landlord successfully countered the Association's initial prima facie case by a detailed and specific rebuttal. See note 9, *supra.* Although a specific accounting for the shifting burdens of proof would facilitate appellate review, we fail to perceive reversible error in this omission here. The RHC clearly found that the Association did not carry its ultimate burden of persuasion. *See Concerned Vets., supra* note 8, 219 U.S.App.D.C. at 112, 675 F.2d at 1337 ("The burden of proof is, of course, on the applicant and remains with the applicant throughout the proceedings.") (Tamm, J., concurring).

11. We note that recent federal cases have similarly made reductions in hour totals deemed undocumented and excessive. *See, e.g., Oklahoma Aerotronics, Inc. v. United States,* 943 F.2d 1344 (D.C.Cir.1991) (40% reduction in hours billed); *Von Clark v. Butler,* 916 F.2d 255, 259 (5th Cir.1990) (affirming District Court discretion to reduce 291 hours sought to 112.5 hours, "[g]iven the inadequacy of [the applicant's] time records and the district court's own experience and observations of the proceedings ...").

### 1—*Documentation Requirement*

As the United States Court of Appeals for the District of Columbia Circuit has noted, "it is insufficient to provide the District Court with very broad summaries of work done and hours logged." *Concerned Vets., supra* note 8, 219 U.S.App.D.C. at 102, 675 F.2d at 1327. Rather, "the application must be sufficiently detailed to permit the District Court [or agency] to make an independent determination whether or not the hours claimed are justified," and "contemporaneous, complete and standardized time records" may be called for to support a disputed fee request. *Id.; accord Hensley, supra,* 461 U.S. at 438 n. 13, 103 S.Ct. at 1942 n. 13 (approving the reduction of one attorney's hours "by 30 percent to account for his inexperience and failure to keep contemporaneous time records"); *Grendel's Den v. Larkin,* 749 F.2d 945, 952 (1st Cir.1984). Here the RHC determined that the documentation offered by the Association was in several respects "simply not adequate to explain the work performed when counsel intends to persuade us that we should impose the cost of his fees on another party. Clearly this serious deficiency throws doubt upon the validity of the entire presentation." The RHC noted that the Association "submitted no contemporaneous timekeeping records to show that these hours were in fact expended," and expressed concern that the record of counsel's hours not be "an after-the-fact estimate of what may have been done." As an example, in regard to a single entry submitted to cover 40 hours over four days of work,[12] the RHC found the dearth of detail disturbing.

While it is true, as the Association argues, that the itemization of hours claimed generally specified the dates the work was performed, the general nature of the services, and the total time spent, more could be required of the Association in this contested award request. Even if the itemization was, for certain purposes, "of the type traditionally used in the legal profession," as the Association asserts, it did not provide as much information as the trial court and this court ordinarily expect for CJA litigation on the itemization form entitled "Explanation of Claim for Services and Expenses." Such forms require in addition daily dating of services, as opposed to aggregate entries, as well as logging of the times of day work is begun and ended and categorization by type of work performed. The RHC could require as much here.[13]

### 2—*Hours Reasonably Expended*

■ The RHC rested its reduction of allowable hours on the ground that much of the itemized work was redundant or irrelevant and therefore inappropriately charged in the sense that counsel could not have responsibly charged a client as much. Since the question whether hours are unreasonably charged obviously depends on the individual facts of the case, the task of attending to each claimed category of hours is uniquely the agency's and the results of such review singularly within the ken and the discretion of the agency. Moreover, the agency "closely monitors the litigation on a day-to-day basis ..., [is] intimately familiar with the ... pleadings, memoranda, and documents filed, and ... observe[s] the proficiency of counsel in court. Our inspection of the cold record cannot substitute for [its] first-hand scrutiny. Under these circumstances, we are most hesitant to upset the product of [its] judgment." *Copeland, supra* note 8, 205 U.S.App.D.C. at 411, 641 F.2d at 901.

The RHC determined, as to the claimed hours for work on the notice of appeal to the RHC and the memorandum in support

---

12. The entry claimed 40 hours of compensation for "Research for Appellant's Brief of Motion for Summary Reversal," without any more elaboration or description, and was simply dated "February 21–17 [sic]." Likewise, the RHC noted a single entry for the period March 30–April 8, covering 30 hours described simply as drafting the brief and three motions.

13. Nothing in our case law denies the RHC the ability to articulate its own reasonable standards of documentation. *Cf. Central Fidelity Bank v. McLellan,* 563 A.2d 358, 360 (D.C.1989) (trial court may, if it deems it necessary, require testimony as to nature of services required); *In re Meese,* 285 U.S.App.D.C. 186, 198, 907 F.2d 1192, 1204 (1990) (reducing award due to "numerous inadequately documented billings"). The Association did not move in the RHC to supplement its submission after the RHC issued its decision.

of a summary reversal of the Rent Administrator's decision, that the number of hours charged was "so inordinately large" that counsel either was inexperienced in rental housing cases,[14] had made an "after-the-fact guess" as to hours expended, or else "was inflating his hours beyond all reason." It concluded also that the Association's counsel made arguments and filed motions with little relevance to the case and which were redundant and excessive, and exercised an "absence of billing judgment." *See Hensley, supra,* 461 U.S. at 437, 103 S.Ct. at 1941. It thus reduced this category of hours by more than half, to 40 hours.[15] It reduced additional hours sought for the motions themselves by over two-thirds, to 8 hours. The RHC also determined that counsel included a category of hours for which compensation was unallowable because not "attorney work." [16]

The RHC was uniquely situated to gauge the reasonableness of the work claimed. Our function can only be to judge whether these determinations came within the wide bounds permitted to the agency. In making its determinations, the RHC was not unmindful of the benefits to the tenants of the work done by counsel. Nonetheless, it believed the fee sought was far in excess of what was justified, and provided a reasoned and extensive explanation for its conclusion.

### B—*Reasonable Hourly Rate*

■ In fixing the "reasonable hourly rate for the services rendered, as measured by prevailing market rates in the relevant community for attorneys of similar experience and skill," *Jerry M., supra,* 580 A.2d at 1281; *Copeland, supra* note 8, 205 U.S.App.D.C. at 106, 641 F.2d at 892, the RHC reduced the claimed rate for counsel's work from $125 to $100. It reasoned that the Association provided insufficient information to document its hourly rate request.[17] Thus, the RHC resorted to the Equal Access to Justice Act, 28 U.S.C. § 2412 (1988), which we have noted is closely related to our RHC fee-authorization statute, D.C.Code § 45–2592, *see Hampton I, supra,* 573 A.2d at 12, and which pro-

14. "Hours are not reasonably expended ... if an attorney takes extra time due to inexperience, or if an attorney performs tasks that are normally performed by paralegals, clerical personnel or other nonattorneys." *Action on Smoking and Health v. CAB,* 233 U.S.App.D.C. 79, 88–89, 724 F.2d 211, 220–21 (1984); *accord Hensley, supra,* 461 U.S. at 438 n. 13, 103 S.Ct. at 1942 n. 13. In *Reid v. Sinclair, supra* note 8 at 17 (citing *Kow v. New York City Housing Auth.,* 539 F.Supp. 708 (S.D.N.Y.1982)), the RHC stated: "[W]e note that rental housing litigation is a specialized field and the fee award should not be an occasion for counsel who are not experienced in this area to educate themselves at the expense of the other party."

15. The Association argues that the RHC improperly based this reduction in part on the ground that while the Association made many arguments on the merits, the RHC in its order reversing the Rent Administrator relied on only one of them, and that therefore the RHC believed that work on the other arguments could not be compensated as a matter of law. We do not read the order as making such a sweeping conclusion in its observation that the submissions were "laden with arguments that simply have no application to the case" and "went beyond the reasonable to the unacceptable."

16. Counsel claimed 10 hours for effecting service, filing papers, and making trips for various errands. The Association argues that these hours should have been reduced, not denied outright. Expenditures for such work, if not subsumed in overhead, might be characterized as costs. We do not understand these tasks to be claimed as those of law clerks or paralegals, and in any event no documentation for the rates of such services was submitted. *Cf. In re Meese, supra* note 13, 285 U.S.App.D.C. at 198, 907 F.2d at 1204. On appeal, the Association takes no issue with the RHC's position, expressed with respect to $700 in costs sought by the Association and apparently paid by the landlord, that it is not authorized to award costs. We therefore have no occasion to decide the issue.

17. Had the Association met its initial burden of providing adequate support for the requested rate, the burden then would fall on the landlord

> to go forward with evidence that the rate is erroneous. And when the [respondent landlord] attempts to rebut the case for a requested rate, it must do so by equally specific countervailing evidence. Although there may be occasions [as in the instant case] in which the applicant's showing is so weak that the [landlord] may without more simply challenge the rate as unsubstantiated, in the normal case the [landlord] must either accede to the applicant's requested rate or provide specific contrary evidence tending to show that a lower rate would be appropriate.

*Concerned Vets., supra* note 8, 219 U.S.App.D.C. at 101, 675 F.2d at 1326.

vides for a rate of $75 an hour, subject to a cost of living adjustment to be determined by the court. The RHC made such an adjustment and determined the proper rate here to be $100 per hour.[18]

The RHC had before it only the Association counsel's affidavit, "which simply states that he performed the legal services," plus a resume containing "no references to clients or fees, two letters of recommendation from former associates and one letter from a former client ... which states that the client paid a fee of $125.00 per hour." We perceive no abuse of the broad discretion afforded to the agency to require documentation in addition to the single letter from a prior client and the affidavits from colleagues. *See Concerned Vets., supra* note 8, 219 U.S.App.D.C. at 100–101, 675 F.2d at 1325–26.

Accordingly, the award by the RHC of $5,125 for services rendered by the Association's counsel at the agency level in this litigation [19] must be

*Affirmed.*

**18.** Since we ourselves have resorted to the Equal Access to Justice Act in determining an hourly fee rate for appellate fees, *see District of Columbia v. Hunt, supra,* 525 A.2d at 1017, we find no merit in the Association's argument that the RHC's similar reliance was necessarily improper as a matter of law.

**19.** Also pending is a request by the Association's appellate counsel, *see supra* note 3, for attorney's fees for services rendered in the appellate process before this court in *Hampton I,* which the RHC correctly said should be sought in this court. *See Alexander, supra,* 542 A.2d at 361–62. The Association in its reply brief on this appeal annexed additional support for the original request and further indicated it wished "an opportunity to supplement its request after completion of oral argument." Likewise, the landlord at oral argument requested the opportunity to respond to the additional material contained in the Association's reply brief. Accordingly, the Association may file any supplement to its fee request within thirty days from the date of this opinion, and the landlord shall have thirty days thereafter to respond.