*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 13-AA-199

TENANTS OF 710 JEFFERSON STREET, NW, PETITIONERS,

v.

DISTRICT OF COLUMBIA RENTAL HOUSING COMMISSION, RESPONDENT,

and

STEVEN LONEY, INTERVENOR.

On Petition for Review of a Decision of the
District of Columbia Rental Housing Commission
(SR-20,089)

(Argued June 4, 2014                                    Decided August 20, 2015)

*Paul M. Smith*, with whom *Melissa A. Cox*, *Esteban M. Morin*, and *Ann K. Wagner* were on the brief, for petitioners.

*Donna M. Murasky*, Senior Assistant Attorney General for the District of Columbia, with whom *Irvin B. Nathan*, Attorney General for the District of Columbia at the time the brief was filed, *Todd S. Kim*, Solicitor General, and *Loren L. AliKhan*, Deputy Solicitor General, were on the brief, for respondent.

*Roger D. Luchs* for intervenor.

Before FISHER and EASTERLY, *Associate Judges*, and RUIZ, *Senior Judge.*

Opinion for the court by *Senior Judge* RUIZ.

Opinion by *Associate Judge* FISHER, dissenting in part, at page 45.

RUIZ, *Senior Judge*:  This is the second time this case comes before the court on a petition for review of a decision of the District of Columbia Rental Housing Commission ("the Commission").  In the first appeal we upheld the Commission's decision denying a substantial rehabilitation petition filed by Steven Loney, the owner of a fourteen-unit residential building at 710 Jefferson Street, Northwest ("the Landlord"), that was opposed by the tenants of the building ("the Tenants"). *Loney v. District of Columbia Rental Hous. Comm'n*, 11 A.3d 753 (D.C. 2010), *en banc reh'g denied* Feb. 17, 2011.  However, we reversed the Commission's calculation of attorney's fees for work performed by The Legal Aid Society of the District of Columbia ("Legal Aid") in its successful representation of the Tenants in the administrative proceedings and remanded the case for further consideration of the attorney's fees award. *See id.* at 759-61.  The Tenants subsequently filed a motion in this court requesting fees for Legal Aid's work on the first appeal and on the response to the Landlord's en banc petition, which we referred to the Commission for an initial recommendation.  The petition for review we now consider is brought by the Tenants who contest the Commission's reduction of the attorney's fees requested for Legal Aid's work done in the first appeal before the court and on remand before the Commission following that appeal.

The Commission discounted the proposed hourly rates, which were based on the Laffey Matrix, by about twenty percent and also reduced Legal Aid's hours-expended calculation. We conclude that the Commission erred in lowering the Laffey-derived rates, and that it abused its discretion in shaving the hours Legal Aid reasonably expended in representing the Tenants. Accordingly, we reverse the Commission's fee award for Legal Aid's representation in the remand proceeding and do not adopt the Commission's recommendation for fees for Legal Aid's representation of the Tenants before the court. Tenants are awarded attorney's fees in the amount of $30,798.80 for work performed by Legal Aid in connection with the first appeal and subsequent remand.

## I. BACKGROUND

The facts and procedural background of the underlying administrative case are set out in our opinion in the first appeal, *Loney*, 11 A.3d 753, so we provide only the facts and procedural history relevant to the issues concerning attorney's fees that are now before us. On August 6, 2004, the Landlord filed a substantial rehabilitation petition for his 14-unit apartment building, which would have allowed an increase in the rent charged to the Tenants. After a hearing examiner of

the Housing Regulation Administration, Rental Accommodations and Conversion Division (the "RACD") granted the petition on July 28, 2005, the Tenants appealed. The Commission reversed the hearing examiner's decision on September 3, 2008, denied the landlord's petition, and awarded attorney's fees to the Tenants. Landlord petitioned for review by this court of the Commission's order denying Landlord's substantial rehabilitation petition, and the Tenants cross-petitioned, challenging the amount of the Commission's attorney's fee award.

On September 23, 2010, we affirmed the Commission's order denying the Landlord's substantial rehabilitation petition but reversed and remanded its decision on the attorney's fee award. We concluded that, contrary to the Commission's order, the Commission had jurisdiction to award attorney's fees for work performed before the hearing examiner. *See id.* at 759-60. Additionally, we held that the Commission abused its discretion in rejecting the proposed hourly rate of $225, based on the Laffey Matrix,[1] and adopting, instead, the $125 fee provided in the Equal Access to Justice Act ("EAJA") applicable to certain civil

---

[1] Laffey Matrix 2003-2014, U.S. Attorney's Office for the District of Columbia, *available at* http://www.justice.gov/usao/dc/divisions/Laffey_ Matrix%202014.pdf. The Laffey Matrix has its origins in the case *Laffey v. Nw. Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983), *rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984).

actions brought by or against the United States Government, 28 U.S.C. § 2412 (d)(2)(A). *See id.* at 760. Because the Landlord did not contest the Tenants' proposed hourly rate or submit alternative hourly rates, and because the Commission's only rationale for *sua sponte* applying EAJA rates was that it "has traditionally used" those rates "without any consideration of the *Frazier* [*v. Franklin Inv. Co.*, 468 A.2d 1338, 1341 n.2 (D.C. 1983)] factors," we concluded that "rejection of the [T]enants' proposed rate[s] constituted an abuse of discretion." *Loney*, 11 A.3d at 760.

Accordingly, we "remand[ed] for further consideration of the [T]enants' proposed hourly rate for attorney's fees . . . and to provide the [T]enants with an opportunity in which to present their claim for attorney's fees for work performed before the hearing examiner." *Id.* at 760-61. We noted that the Tenants "could provide more evidence to support the Laffey Matrix as the appropriate rate—for example, expert testimony or affidavits regarding rates charged by attorneys for similar work in the District of Columbia." *Id.* at 761 n.5.

Following the issuance of our opinion in *Loney*, the Tenants filed a motion in this court requesting attorney's fees for legal work performed by Legal Aid on the first appeal (briefing and oral argument), which it supplemented with the

additional fees associated with responding to the Landlord's petition for rehearing en banc. The Landlord opposed the request. On April 20, 2011, we issued an order referring the Tenants' request for fees to the Commission "for calculation of the reasonable number of hours and hourly rate the agency recommends be awarded."[2]

On remand before the Commission, the Tenants requested $28,350 for Legal Aid's representation before the RACD and the Commission during the administrative proceedings, and presented the request for $27,752.75 that had been submitted to the court for work performed in connection with the first appeal to this court.[3] In a supplemental motion, the Tenants requested an additional $6,033.75 for work done by Legal Aid before the Commission pursuant to this court's remand.

---

[2] We referred the Tenants' motion to the Commission for a recommendation pursuant to our decision in *District of Columbia Metro. Police Dep't v. Stanley*, 951 A.2d 65, 67-68 & n.13 (D.C. 2008), in which we held that "in cases where a party seeks to recover statutorily authorized attorney's fees for work completed on an appeal to this court, the request normally should be submitted to the trial court in which the proceeding arose." By analogy, where the case is a petition for review of an administrative decision, the fee petition is initially referred to the agency where the proceedings were initiated.

[3] Of the $27,752.75 requested, $21,013.35 was for briefing the appeal and oral argument and the remainder for opposing the Landlord's petition for rehearing en banc.

In support of their fee requests, the Tenants submitted an affidavit from Julie Becker, the lead attorney in the appeal, which set out the education and professional experience of the Legal Aid attorneys involved in the case and detailed billing entries for work done on appeal and on remand, broken down by stage of the litigation (appeal, response to petition for rehearing, remand before Commission), attorney, date, time expended and description of the work performed.[4] As Legal Aid represents indigent clients and does not have established billing rates, the Tenants proposed that in calculating the attorney's fee award, the hourly rate should be based on the Laffey Matrix.[5] The Tenants provided six affidavits from attorneys who practice in the District of Columbia who attested to the reasonableness of the Laffey rates for work performed by Legal Aid in this case.[6]

---

[4] Legal Aid Executive Director Eric Angel, and Legal Aid attorneys Julie Becker, Bonnie Robin-Vergeer and John Keeney.

[5] The proposed hourly rates, following the Laffey Matrix, ranged from $335 to $420 for work done during the 2010 appeal, $420 to $475 for work performed in opposing the rehearing en banc petition in 2010, and $435 to $495 for legal work on remand following the appeal in 2011-12.

[6] Legal Aid submitted affidavits from David J. Cynamon, Charles G. Cole, George H. Mernick, Stephen J. Harburg, Philip W. Horton and Paul J. Kiernan. Cynamon's affidavit stated that he was a partner at Pillsbury Winthrop Shaw Pittman LLP and has been practicing "complex civil litigation of all types,

(continued . . .)

On June 6, 2012, the Commission issued an order in which it approved an award of $22,162.50 for work done in the administrative proceedings prior to the 2010 petition for judicial review that led to the first appeal.[7]  With respect to the work done in connection with the appeal to this court and the subsequent remand, the Commission reduced the hours claimed by twenty percent.  As to the hourly

(. . . continued)
including real estate litigation," in the District of Columbia since 1973. Harburg's affidavit stated that he was a partner at Skadden, Arps, Slate, Meagher and Flom LLP and that he specialized in "complex litigation at both the trial court and appellate court levels."  According to Cole's affidavit, Cole was a partner at Steptoe & Johnson LLP and leader of its Appellate Practice Group.  Mernick's affidavit stated that he was a partner at Hogan Lovells US LLP, and that he has been practicing for thirty-one years in the District of Columbia "litigating matters before federal and state courts, administrative bodies and arbitrators."  According to Horton's affidavit, Horton was a partner at Arnold & Porter LLP and a senior member of the firm's Litigation and Telecommunications Practice Groups, and he has been a member of the District of Columbia bar since 1984.  Kiernan's affidavit stated that he was a partner in the Litigation Section of Holland & Knight LLP with over twenty years of practice in the District of Columbia, and that his "practice has focused on real-estate disputes and commercial litigation."  They each attested to the reasonableness of the Laffey rates in this litigation and opined that they were lower than would have been charged in their respective firms.

[7]  The Commission reduced by twenty-two percent the hours claimed by Legal Aid attorneys for time spent on the RACD proceedings, but did not make any reductions for time spent on proceedings before the Commission because those hours were uncontested.  Landlord also did not contest the Tenants' proposed hourly rates, based on the Laffey Matrix, for work performed in the administrative proceedings before the petition for judicial review.  The Commission awarded fees based on the Laffey-derived rates.  The award of these fees is not challenged by Tenants.

rates in the Tenants' request, the Commission noted that the Landlord did not dispute the proposed hourly rate for Becker's work on the appeal, which was $335 based on the Laffey Matrix. However, the Landlord did dispute the hourly rates for the work performed by Becker and the other Legal Aid attorneys in responding to the Landlord's petition for rehearing en banc and in litigating the case on remand before the Commission, even though they were similarly based on the Laffey Matrix.[8]

The Commission was not persuaded by the affidavits submitted supporting the reasonableness of the Laffey rates. According to the Commission, "each of the attorneys who submitted an affidavit practices at a large multi-regional, or multi-national, law firm that typically do not represent clients under the [Rental Housing] Act before the Commission," and "[s]uch large law firms customarily have billing rates which are among the higher or highest levels in this jurisdiction." The Commission further noted that "[Legal Aid] provide[d] no evidence to refute [Landlord's] counsel's claim that their lengthy experience in litigating claims under the Act and their lower fees than a number of [Legal Aid's] proposed rates

_____

[8] The Landlord argued that the Tenants' proposed Laffey-derived rates were excessive because they were higher than Landlord's counsel's own rate of $375 per hour, and on par with the $450 hourly rate charged by two senior attorneys at Landlord's counsel's firm, Greenstein, Delorme & Luchs, P.C., who had more years of experience than some of Legal Aid's attorneys such as Becker.

clearly support the existence of a distinct specialized practice in, and market for, rent control and rental housing under the Act." As a result, the Commission ordered both parties to submit affidavits on prevailing hourly rates from attorneys of comparable experience "who are ordinarily and customarily engaged in the practice of litigating actions in the 'specialized' field of rent control and rental housing under the Act similar to the instant case."

Pursuant to the Commission's order, the Tenants submitted an affidavit from Erik Von Salzen, a real estate attorney with more than forty years of experience, who stated that his hourly rate as of counsel at McLeod, Watkinson & Miller LLP for "rent control and similar work" was $400. Von Salzen also stated that when he was of counsel at Hogan & Hartson LLP (now Hogan Lovells), he charged an hourly rate of $550. The Landlord submitted affidavits from Carol Blumenthal and Bernard Gray. Blumenthal's affidavit stated that she has practiced law for more than thirty years representing both landlords and tenants in administrative proceedings, and that she charged $295 per hour. Gray's affidavit stated that he has been practicing for thirty-four years and regularly represented landlords and tenants, and that he charged $250 per hour.

The Commission issued a second order on attorney's fees on January 29, 2013. The Commission first noted that in calculating the award of attorney's fees

for the work done before the RACD, it had been "persuaded by [Legal Aid's] legal arguments and evidence that the Laffey Matrix provides an appropriate standard for setting hourly rates for a [Legal Aid] attorney's representation before RACD, the Commission and the DCCA." When it came to fees for work by Legal Aid attorneys before the court on appeal and on remand to the Commission, however, the Commission ruled that it "must further determine the 'reasonableness' of a proposed hourly rate from the Laffey Matrix by assessing the prevailing hourly billing rates for attorneys of comparable experience practicing in the 'specialized field' of rent control and rental housing under the Act." Ultimately the Commission found that the Tenants had not borne their burden of supporting that the Laffey rates were "presumptively or automatically reasonable, without the further possibility of adjustments to be made by the Commission in accordance with its well-settled fee standard." The Commission concluded that substantial evidence did not support that Laffey rates were reasonable rates for attorneys of comparable experience in the specialized field of rent control and rental housing under the Act. The Commission commented that Von Salzen, Blumenthal and Gray were among the most experienced attorneys "in the specialized field of rent control in this jurisdiction." Specifically, the Commission found that Von Salzen's $550 hourly rate when he was practicing at Hogan & Hartson reflected the higher end of rates for real estate attorneys, given that Hogan & Hartson (now Hogan

Lovells) is a prominent law firm in the District of Columbia. The Commission further noted that the lowest Laffey rate proposed by the Tenants for the least experienced Legal Aid attorneys ($420) was still higher than Von Salzen's current billing rate ($400) at the smaller firm of McLeod, Watkinson & Miller, and of attorneys Blumenthal and Gray, who practiced at "considerably smaller" firms. Therefore, the Commission reduced each of the proposed Laffey-based hourly rates by approximately twenty percent, resulting in rates ranging from $335 to $395.

In the first order, the Commission had awarded $14,023 based on the undisputed Laffey hourly rate for Becker's work on the first appeal. In the second order, the Commission awarded $9,213 for work performed by Legal Aid attorneys Angel and Robin-Vergeer in the first appeal before the court and for Legal Aid's representation of the Tenants in opposing the Landlord's petition for rehearing en banc and on remand to the Commission.[9] In both orders, the Commission calculated the lodestar based on the reduced number of hours it approved. The

---

[9] The second fees award consisted of:

| | |
|---|---|
| First Appeal (Angel and Robin-Vergeer) | 2,010 |
| Response to Petition for Rehearing En Banc | 3,279.35 |
| Proceedings before Commission on remand | 3,923.85 |
| | $9,213.20 |

combined total of $23,236 was twenty-seven percent less ($8,660.30) than had been requested. The Tenants filed a timely petition for review in this court challenging the Commission's fee award. They ask the court to award fees in the lodestar amount of $31,896.50 for the 85.55 hours claimed at the hourly rates established in the Laffey Matrix.

## II. ANALYSIS

### A.    Standard of Review

The parties have slightly different contentions about the standard of review we should apply. Petitioners contend that whether the Commission erred in holding that Laffey rates are not presumptively reasonable, and in setting the hourly rate according to rates charged by attorneys in the "specialized field of rent control and rental housing under the Act," is a question of law we should review de novo. They argue that the interpretation of what is a "reasonable" award of fees under D.C. Code § 42-3509.02 is a legal question of statutory interpretation and that the usual deference to an agency's interpretation of a statute entrusted to its administration should not obtain here, where the court, and not only the agency, has direct authority to implement its provisions. *See Loney*, 11 A.3d at 759. They

also argue that the court is in a better position to assess reasonableness in a case, such as this, where the contested fees relate for the most part to legal services rendered in connection with representation on judicial review by the court. Respondent's brief contends that the Commission's determination of what is a reasonable hourly rate should be reviewed under the customary deferential standard: whether the decision was arbitrary or capricious and its conclusions supported by substantial evidence. At oral argument, however, counsel for respondent stated that the court could decide to make its own independent decision in this case where the fees are not for legal work in the administrative proceedings before the agency.

We usually review the Commission's attorney's fees awards for an abuse of discretion. *Hampton Courts Tenants Ass'n v. District of Columbia Rental Hous. Comm'n*, 599 A.2d 1113, 1115 (D.C. 1991). As the Supreme Court has noted, "[t]his is appropriate in view of the [agency's] superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Nonetheless, "[a]n exercise of discretion must be founded upon correct legal standards." *Teachey v. Carver*, 736 A.2d 998, 1004 (D.C. 1999). To warrant judicial deference, the exercise of discretion also must be internally consistent and

logical such that the agency's conclusions flow rationally from its findings. *See Jones v. District of Columbia Dep't of Emp't Servs.*, 41 A.3d 1219, 1225 (D.C. 2012) ("Discretion there may be, but methodized by analogy, disciplined by system . . . . Discretion without a criteria for its exercise is authorization of arbitrariness." (citations and internal quotation marks omitted)).

With respect to the Commission's calculation of the reasonable hours expended, the Tenants contest only the reduction of hours for work performed before this court in the first appeal.[10] While we normally review factual findings such as "what work counsel performed" and "whether that work was necessary and appropriate" for an abuse of discretion, *District of Columbia Metro. Police Dep't v. Stanley*, 951 A.2d 65, 67 (D.C. 2008), in reviewing the Commission's recommendation[11] with respect to attorney's fees for work performed in this court, our usual deference is tempered because the Commission was not "intimately familiar with the . . . documents filed" in that appellate litigation and was not able

---

[10] Tenants do not take issue with the Commission's reduction of hours expended by Legal Aid in litigating before the Commission pursuant to this court's remand order.

[11] In ordering the award of fees for legal work performed before this court the Commission went beyond the scope of this court's referral, which asked for a *recommendation* to the court.

to "observe[] the proficiency of counsel in court." *Hampton Courts*, 599 A.2d at 1117 (quoting *Copeland v. Marshall*, 641 F.2d 880, 901 (D.C. Cir. 1980)).

For the reasons that follow, we decide that whether our review is de novo or for abuse of discretion, the Commission's order rejecting the Laffey rates as presumptively reasonable and reducing the number of hours to be compensated must be reversed.

**B.     Fee Awards Under the Rental Housing Act**

The Rental Housing Act of 1985 ("the Act") provides that the "Rent Administrator, Rental Housing Commission, or a court of competent jurisdiction may award reasonable attorney's fees to the prevailing party in any action under this chapter . . . ." D.C. Code § 42-3509.02 (2012 Repl.). "[T]he purposes of the attorney's fee provision are to encourage tenants to enforce their own rights, in effect acting as private attorneys general, and to encourage attorneys to accept cases brought under the Rental Housing Act of 1980." *Ungar v. District of Columbia Rental Hous. Comm'n*, 535 A.2d 887, 892 (D.C. 1987). There is no dispute the Tenants have prevailed in this litigation and that they are presumptively entitled to attorney's fees under the Act. *See id.* The only issue is how the fees

should be calculated where the legal work is performed by an organization such as Legal Aid, which has no established hourly billing rates that can be used as a measure of what is a "reasonable" rate.

Regulations implementing the Act require that the fee award be determined first by calculating the "lodestar," which is the "number of hours reasonably expended on a task multiplied by a reasonable hourly rate." 14 DCMR § 3825.8 (a) ("The starting point shall be the lodestar . . . ."). The Commission or other fee-calculating body then "may" adjust the lodestar up or down after considering the following list of factors:

> (1) the time and labor required; (2) the novelty, complexity, and difficulty of the legal issues or questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney, due to acceptance of the case; (5) the customary fee or prevailing rate in the community for attorneys with similar experience; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; (12) the award in similar cases; and (13) the results obtained, when the moving party did not prevail on all the issues.

14 DCMR § 3825.8 (b) (2015).[12]

## C.     Reasonable Hourly Rates

The lodestar method, as adopted by regulations promulgating the Act, is the method used to calculate attorney's fees under other statutory fee-shifting provisions, including those contained in federal and District of Columbia civil

---

[12] These factors are nearly identical to the twelve factors that we adopted in *Frazier v. Ctr. Motors, Inc.*, 418 A.2d 1018, 1025 (D.C. 1980), as part of the analysis when setting a "reasonable" fee award. The *Frazier* factors are: (1) time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See id.*

At the time of the *Frazier* decision, we had not yet adopted the lodestar method. After adopting the lodestar method in *District of Columbia v. Hunt*, 525 A.2d 1015, 1016 (D.C. 1987) (per curiam), we noted that the *Frazier* factors are often subsumed within the initial calculation of the reasonable rate and hours expended, instead of being used as a basis for adjusting the lodestar amount. *Hampton Courts*, 599 A.2d at 1115 n.8 (citing *Hensley*, 461 U.S. at 434 n.9).

In this case the Commission did not make any upward or downward adjustments to the "lodestar" amount, which was calculated as the reasonable hourly rate (as determined by the Commission) multiplied by the reasonable number of hours (as reduced by the Commission) expended. *See* 14 DCMR § 3825.8 (a)-(b).

rights statutes such as 42 U.S.C. § 1988 and D.C. Code § 2-1402.01 (2012 Repl.). Case law on fee awards under those statutes provides useful guidance for determining the appropriate standard for determining a reasonable hourly rate in this case.

The Supreme Court in a case concerning a § 1988 fee award rejected the argument that an alternate method (specifically, a cost-based method) should be applied when calculating fee awards to nonprofit legal services organizations such as Legal Aid.  *See Blum v. Stenson*, 465 U.S. 886, 895 (1984).  Relying on *Blum*, we also have held that "[t]he identity of the party against whom the fees will be charged, *i.e.*, individual vs. governmental defendants, or whether representation was provided by private or nonprofit counsel is irrelevant."  *Henderson v. District of Columbia*, 493 A.2d 982, 1000 (D.C. 1985).  Accordingly, in calculating the lodestar amount in this case, the "reasonable hourly rate" should be measured by the same standard used for calculating fee awards to counsel in private practice: the "prevailing market rates in the relevant community for attorneys of similar experience and skill."  *Hampton Courts*, 599 A.2d at 1118 (quoting *District of Columbia v. Jerry M.*, 580 A.2d 1270, 1281 (D.C. 1990)).

The reason for this standard, we have said, is that "it is important that attorneys who are willing to take on civil rights and other public interest work are adequately compensated, or it will be difficult to find competent counsel to handle this important job." *Lively v. Flexible Packaging Ass'n*, 930 A.2d 984, 988 (D.C. 2007). "The goal, [therefore], is to attract competent counsel for these cases, but not to provide them with windfalls." *Id.* (citations omitted).

"[A] fee applicant's burden in establishing a reasonable hourly rate entails a showing of at least three elements: [1] the attorneys' billing practices; [2] the attorneys' skill, experience, and reputation; and [3] the prevailing market rates in the relevant community."[13] *Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995) (citing *Blum*, 465 U.S. at 896 n.11). Once the fee applicant has met its initial burden, "the burden then would fall on the landlord 'to go forward with evidence that the rate is erroneous.'" *Hampton Courts*, 599 A.2d at 1118 n.17 (quoting *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1326 (D.C. Cir. 1982)). "And when the [respondent landlord] attempts to rebut the case

---

[13] The first two elements are amply supported by the Tenants' fee request. The Legal Aid attorneys' credentials and professional competence are undisputed. The Commission noted that "each of the [Legal Aid] attorneys provided the Tenants with a high quality of legal services." The court concurs with that assessment.

for a requested rate, it must do so by equally specific countervailing evidence." *Concerned Veterans*, 675 F.2d at 1326.

Here, Tenants provided affidavits setting out the educational background and professional experience of the Legal Aid attorneys who worked on the case and, because Legal Aid does not charge its clients, who are indigent, it proffered the Laffey rates "as the prevailing market rates." The Commission, however, rejected the Laffey Matrix as a standard because it does not reflect rates charged by attorneys in the submarket of rental housing litigation. The Tenants argue that rates derived from the Laffey Matrix are presumptively reasonable in the District of Columbia, and that the Commission erred when it defined the "relevant community" not as lawyers practicing in the District of Columbia but, more narrowly, as comprised of attorneys who practice rental housing litigation in non-major law firms and, more narrowly still, as those practicing in small firms. We agree with the Tenants that, where the attorney work to be compensated is not regularly billed, Laffey rates are a presumptively reasonable measure of billing rates in the District of Columbia.

The Laffey Matrix is a fee schedule of hourly rates for attorneys practicing in the District of Columbia, broken down by years of experience. It is compiled

and published by the Civil Division of the United States Attorney's Office for the District of Columbia and is updated annually to reflect changes in the cost of living.[14] The Laffey Matrix is "regularly used in the federal courts of this jurisdiction to determine attorneys' fees where, as here, there is a statutory entitlement." *Lively*, 930 A.2d at 988-89. The federal government's announced policy is that it will not contest the award of fees based on the Laffey Matrix in cases where certain fee-shifting statutes provide for attorney's fees to the prevailing party. *See Novak v. Capital Mgmt. & Dev. Corp.*, 496 F. Supp. 2d 156, 159 (D.D.C. 2007). This concession that the fees are reasonable when they will be paid out of the public fisc is a significant indicator that the fees are not excessive or out of tune with the market.[15] Laffey-derived rates have also been used to calculate the lodestar for attorney's fees in private litigation in the courts of the District of Columbia. *See, e.g.*, *Campbell-Crane & Assocs., v. Stamenkovic*, 44 A.3d 924, 947-48 (D.C. 2012) (noting that trial court resorted to Laffey Matrix in determining reasonable rates based on lawyers' experience); *Lively*, 930 A.2d at

---

[14] Laffey-Matrix - 2003-2014, U.S. Attorney's Office for the District of Columbia, *available at* http://www.justice.gov/sites/default/files/usao-dc/legacy/2013/09/09/Laffey_Matrix%202014.pdf.

[15] Courts have suggested that Laffey rates may be lower than the rates large firms in the District of Columbia command, as supported by the affidavits submitted by the Tenants. *See Heller v. District of Columbia*, 832 F. Supp. 2d 32, 48 n.14 (D.D.C. 2011). The Commission, however, seemed to think that the Laffey Matrix reflected rates at the higher echelons.

990 (accepting the Laffey Matrix "as one legitimate means of calculating attorney's fees in those cases, such as this, where a prevailing party is statutorily entitled to attorneys fees"). And, as the Commission acknowledged, Laffey-derived rates have been used by the Commission to award attorney's fees under the Act. Indeed Laffey rates were used in this case without objection in calculating the award of fees for Legal Aid's work in the administrative proceedings and for Becker's work on the first appeal. Against this background, the Commission's conclusion that Laffey rates are not a presumptively reasonable measure of hourly rates in the District of Columbia fights principles established in caselaw and its own previous actions in this case applying Laffey rates.

The Commission also erred in veering from basing the lodestar on prevailing rates in the District of Columbia to what it considered the prevailing rate in the "specialized submarket" of rent control litigation under the Act. The bulk of the attorney's fees award that is challenged in this appeal was for legal representation in the first appeal and on remand before the Commission following that appeal. In the first appeal, a knowledge of the substance of rent control law and, in particular, substantial rehabilitation petitions, was necessary, but it was equally necessary to have knowledge of proper standards of review in judicial review of administrative proceedings and to possess appellate skills—researching, briefing and preparing

for and presenting oral argument.[16]  Moreover, the proceedings on remand had nothing to do with rent control law at all, but with the proper calculation of the award of attorney's fees.  Therefore, the apparent factual premise for the Commission's focus on a "specialized submarket" that the fees were for lawyers engaged in rent control litigation is not applicable to the fees at issue.

We are also unpersuaded by the Commission's reliance on what it describes as the "well established" interpretation that hourly rates are to be set in accordance with rates in the specialized submarket for rent control or rental housing litigation, citing its administrative decisions.[17]  This court has not heretofore passed on the Commission's interpretation.[18]  In doing so now, we note that the Commission's

---

[16]  As noted, there is no dispute between the parties that the Laffey-derived rate the Commission used for Becker's work in the first appeal was reasonable.  It is only the hourly rates for Legal Aid attorneys Angel and Robin-Vergeer that are in contention, as well as the rates for legal representation opposing the petition for rehearing en banc and on remand before the Commission.

[17]  *Hampton Courts Tenants' Ass'n v. William C. Smith Co.*, CI 20,176 (RHC July 20, 1990); *Reid v. Sinclair*, TP 11,334 (RHC Sept. 1, 1988).

[18]  In its order and brief to this court the Commission incorrectly states that the court has approved the Commission's use of a submarket approach, citing *Hampton Courts*, 599 A.2d 1113.  But the court's opinion in that case does not even mention, let alone approve, a specialty submarket approach to the determination of what is a reasonable hourly rate.  Rather, the court's opinion deals primarily with the Commission's determination that the number of hours claimed as having been expended in the representation were "far in excess of what

(continued  . . .)

administrative interpretation implements a statute that authorizes the court—not only the agency—to award attorney's fees for any stage of the proceeding. *See Loney*, 11 A.3d at 759. Thus, although the factual question of what constitute reasonable attorney's fees in a particular case may be entrusted to agency discretion, the threshhold issue whether Laffey rates are presumptively reasonable in the District of Columbia is not a matter that has been entrusted exclusively to agency discretion nor is it one as to which the Commission has greater expertise than the court. *See District of Columbia Office of Human Rights v. District of Columbia Dep't of Corr.*, 40 A.3d 917, 923 (D.C. 2012) (quoting *United States Parole Comm'n v. Noble*, 693 A.2d 1084, 1098 (D.C. 1997), *adopted on reh'g*, 780 A.2d 85 (D.C. 1998) (en banc) (noting that where the issue "is purely one of law not involving an agency's attention to gaps or ambiguities in the statute it administers or to technical applications, we do not defer to an agency

---

(. . . continued)
reasonably skilled counsel expended for similar work in rental housing litigation. . . ."—the concern expressed by the Commission having been that inexperienced counsel had charged hours spent learning about housing law in the course of representation. *Id*. at 1116-18. With respect to hourly rates, the court's opinion quoted a previous opinion for the well-accepted and unremarkable proposition that reasonable hourly rates should be measured by reference to "prevailing market rates in the relevant community for attorneys of similar experience and skill." *Id*. at 1118 (quoting *District of Columbia v. Jerry M*., 580 A.2d 1270, 1281 (D.C. 1990)).

interpretation").[19] On the merits, we note that the Commission's interpretation is not grounded on the language of the statute, which refers generally to "reasonable attorney's fees," D.C. Code § 42-3509.02, as do a number of other fee-shifting statutes. Nor does the Commission's implementing regulation, 14 DCMR § 3825.8 (b), support use of a submarket reference in the lodestar calculation; rather it appears to disfavor such an approach.[20] Thus, even if the Commission's internal interpretation has been around for some time, we reject that it is "well established" by reference to the governing statute, the agency's implementing regulations or the cases interpreting similar language in fee-shifting statutes. *Cf.*

[19] In this regard, it is telling that the Commission's submarket approach, adopted more than twenty-five years ago, fails to take account of subsequent decisions and guidance from the District of Columbia Circuit that look to the Laffey Matrix rates as indicative of the rates prevailing in this legal community and that, as we discuss *infra*, seriously question the value of and impose strict requirements on any attempt to set hourly rates by reference to a submarket for legal specialties.

[20] The regulation provides that one of the twelve "adjustment factors" to be applied *after* the lodestar amount has been calculated is "the customary fee or prevailing rate in the community for attorneys with similar experience." 4 DCMR § 3825.8 (b)(5). The regulation's sequencing of the two steps (lodestar calculation followed by adjustments to the lodestar) logically implies that the hourly rate used to calculate the lodestar amount is *not* based on the community of attorneys "with similar experience." The Commission has said that deviations from the lodestar based on adjustment factors "will be highly unusual," *Reid*, TP 11,334 at 19 & n.7, and it did not purport to adjust the lodestar amount in this case. See *supra* note 12. The Commission's order of January 29, 2013, acknowledges, however, that it essentially incorporated this adjustment factor into the initial lodestar calculation, in contravention of this principle.

*District of Columbia Office of Human Rights*, 40 A.3d at 926 (rejecting agency interpretation because it "misapplied accepted interpretive criteria in considering the relevant language in the regulations, its reasoning is logically flawed, and it did not consider the purpose of an interest award").

We should not be understood as saying that the Laffey Matrix must be applied in every case where the requester has no established rates and that a court or agency will always err if it selects a different measure that is clearly more appropriate under the circumstances. But the Laffey Matrix is a very good place to start, and, we would add, in most cases will be the best place to end lest litigation over attorney's fees overshadow the underlying case. Deviations from the Laffey Matrix's presumptively reasonable measure should not be lightly undertaken and need to be substantially supported. We adopt the D.C. Circuit's caution against engaging in a submarket analysis when setting fee awards, unless the party opposing the fee request presents very specific and reliable evidence establishing the existence of a submarket and the prevailing rates for attorneys practicing within the submarket. *See Covington*, 57 F.3d at 1111-12. In *Covington*, the party opposing the fee request argued that the relevant market should be defined narrowly as including only plaintiff's attorneys in civil rights, employment, or discrimination actions. *Id.* The D.C. Circuit declined to define the market

narrowly because the opponent had "failed to show that a civil rights and employment discrimination market actually exists independent of attorneys who handle other types of complex federal litigation." *Id*. Further, the court noted that "the trial court found no evidence that submarket rates are lower than the prevailing rates in the broader legal market." *Id.* The opponent in that case had submitted an affidavit from the then-assistant deputy Corporation Counsel, which cited seven instances in which lawyers with ten-twenty years of experience charged an hourly rate of about $150 when representing plaintiffs in civil rights, employment, or discrimination cases. *See Covington v. District of Columbia*, 839 F. Supp. 894, 898-99 (D.D.C. 1993). The D.C. Circuit affirmed the district court's finding that this evidence was insufficient.[21] *See Covington*, 57 F.3d at 1111-12.

---

[21] The district court provided additional guidelines on what a "statistically reliable, well-documented, and extensive survey" should contain:

> Such a survey would collect the rates of a statistically significant number of lawyers or firms within a legal sub-market, convincing the court that the survey's scope is broad enough to reflect the market faithfully. Such a survey would be sufficiently documented with supporting affidavits, assuring the court of the accuracy of the survey's data. Lastly, such a survey would encompass both the high rates that large, prestigious law firms in the area command for their work in the sub-market and the lower rates commanded by others for their work in the sub-market.

(continued . . .)

Thus, even if we were to assume that a submarket analysis could be appropriate in some cases, this would not be such a case. First, as we have discussed, the relevant market was not "rent control" litigation but appellate advocacy and issues of attorney's fees. The Tenants submitted six affidavits that supported the reasonableness of Laffey Matrix rates for the work Legal Aid performed in the representation of the Tenants in this case. Second, even if rent control litigation were the appropriate submarket, the evidence the Landlord submitted to establish the prevailing rates in that submarket was insufficient, consisting of only two affidavits by attorneys who attested to their individual rates and of rates in the firm of the Landlord's own lawyer in the case (billing rates within range of the Laffey rates). Far from a comprehensive survey, these affidavits alone do not allow a determination that the rates attested to in the affidavits accurately reflect prevailing rates in the submarket of rental housing litigation, let alone establish that such a market exists. Moreover, the Van Salzen

_____

(. . . continued)

*Covington*, 839 F. Supp. at 899. Although the district court found the evidence submitted by the party opposing the fee request to be insufficient, it did not reject the submarket approach altogether. The court stated that because "courts must aim to award attorney's fees that mirror what counsel would earn in the market," "[i]f the market would provide different sub-markets of lawyers different rates, courts properly aiming to mirror the market would award lawyers in each sub-market the fees that their particular services command in the marketplace." *Id.* at 898.

affidavit presented by the Tenants refuted that evidence. The Landlord's evidence was simply not enough to overcome the presumptive reasonableness of the Laffey Matrix. *See id.* at 1110.

In reaching the conclusion that Laffey Matrix rates are presumptively reasonable and that departure from these rates should not be lightly undertaken, we are guided by the Supreme Court's warning that "[a] request for attorney's fees should not result in a second major litigation." *Hensley*, 461 U.S. at 437. We agree with the D.C. Circuit that the burden should fall squarely on the party opposing a fee request based on the Laffey Matrix to proffer specific countervailing evidence which demonstrates the existence of a defined submarket and the prevailing rates within that market. *See Covington*, 57 F.3d at 1111. Otherwise, requiring courts to engage in an analysis of market definition for each fee application would come at a sacrifice to judicial efficiency and could easily result in a "second major litigation." *Cf. Thompson v. Kennickell*, 710 F. Supp. 1, 5-6 (D.D.C. 1989) (rejecting argument that, in the context of contingency enhancements, the "relevant market" should be defined according to concepts of market definition and product interchangeability as developed under antitrust law, because "to do so would be patently inconsistent with Justice Powell's admonition

in *Hensley . . .* that '[a] request for attorney's fees should not result in a second major litigation'").

Finally, there are significant considerations grounded in the purpose of fee-shifting provisions for the application of Laffey Matrix rates in cases brought under statutes that allow awards of attorney's fees. The fact that a statute provides for attorney's fees to the prevailing party—as an exception to the customary American rule that each party bears its own attorney's fees—implies a legislative determination that the subject of successful litigation is infused with a public interest and that usual market forces are insufficient to supply the necessary incentives to counsel. Public interest litigation oftentimes has ripple effects, beyond the immediate litigation and parties, that further the statutory purpose. It is therefore critical that courts and agencies that decide those cases have a full and cogent presentation. In view of this public interest, attorney's fee awards that compensate counsel for taking on cases under fee-shifting statutes should suffice to attract not simply any counsel, but "*competent* counsel." *Lively*, 930 A.2d at 988 (emphasis added). As in this case, such litigation may be brought on behalf of persons who rarely are able to afford a lawyer and usually are forced to struggle with legal problems on their own—assuming they are aware of their statutorily protected rights in the first place. The public interest is furthered by providing

incentives to counsel to undertake cases that the legal marketplace ordinarily does not and by supporting organizations such as Legal Aid that devote themselves to high quality representation of indigent clients.

Accordingly, we hold that the Commission erred in rejecting the Tenant's proposed Laffey-derived rates as not presumptively reasonable, and in reducing those rates by twenty percent under a submarket theory that was not properly substantiated.　The lodestar for Legal Aid's services should be calculated according to rates derived from the Laffey Matrix. *See District of Columbia Office of Human Rights*, 40 A.3d at 926 (refusing to defer to agency's interpretation because it "misapplied accepted interpretive criteria in considering the relevant language in the regulations, its reasoning is logically flawed, and it did not consider the purpose of an . . .  award").

### D.　Determination of Hours Reasonably Expended

"The [Commission] may exercise its discretion to decrease the number of compensable hours in the lodestar calculation '[w]here the documentation of hours is inadequate' and to 'exclude from [the] initial fee calculation hours that were not 'reasonably expended' or 'that are excessive, redundant, or otherwise unnecessary. . . .'" *Hampton Courts*, 599 A.2d at 1116 (quoting *Hensley*, 461 U.S.

at 433-34). "'Hours are not reasonably expended . . . if an attorney takes extra time due to inexperience, or if an attorney performs tasks that are normally performed by paralegals, clerical personnel or other nonattorneys.'" *Id.* at 1118 n.14 (quoting *Action on Smoking & Health v. Civil Aeronautics Bd.*, 724 F.2d 211, 220-21 (D.C. Cir. 1984)). "'[I]t is insufficient to provide [the fact-finder] with very broad summaries of work done and hours logged.'" *Id.* at 1117 (quoting *Concerned Veterans*, 675 F.2d at 1327). "Rather, 'the application must be sufficiently detailed to permit the [court or agency] to make an independent determination whether or not the hours claimed are justified,' and 'contemporaneous, complete and standardized time records' may be called for to support a disputed fee request." *Id.* "It is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney." *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980) (quoting *Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167 (3d Cir. 1973)). "But without some fairly definite information as to the hours devoted to various general activities, e.g., pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys, e.g., senior partners, junior partners, associates, the court cannot know the nature of the services for which compensation is sought." *Id.*

As noted above, the Tenants contest only the hours reduction for work performed by its attorneys—Eric Angel, Bonnie Robin-Vergeer and Julie Becker—in the first appeal before this court. The Commission summarized Becker's time records, which accounted for most of the fees requested, as falling into five different stages, as follows:

1. "Pre-Brief Preparation," including reading RACD and Commission decisions and brief [of Loney], creating and completing outline of claims and parties' arguments on appeal, and reviewing record on appeal at DCCA offices (4.5 total claimed hours for 2/23/09; 2/24/09; 2/27/09);

2. "Preparation of Appellate Brief for DCCA," including working on brief (statement of facts), working on first draft of brief, completing first draft of brief, revising first draft of brief . . . , preparing a second draft of brief, revising second draft, begin filling in citations to record and explaining to paralegal how to fill in citations to record on appeal, and inputting, final proofreading, bluebooking and stylistic edits (22.2 total claimed hours for 3/1/09; 3/4/09; 3/5/09; 3/6/09; 3/10/09; 3/12/09; 3/13/09; 3/18/09; 3/20/09);

3. "Preparation of Oral Argument before DCCA," including beginning to prepare for oral argument, re-reading all briefs, begin reviewing principal case law, composing likely questions and potential answers for oral argument, creating an outline for oral argument, oral argument practice, distillation of hearing testimony by tenants, moot court, follow-up research from moot court, review of written materials,

beginning re-preparation for oral argument and re-reading briefs, re-reading RACD and RHC decisions, further oral argument practice, further moot court, going over written materials for oral argument and creating a paper file for the oral argument (25.25 total claimed hours for 1/23/10; 1/25/10; 1/28/10; 1/29/10; 1/31/10; 2/1/10; 2/2/10; 2/3/10; 2/8/10; 2/9/10; 4/30/10; 5/1/10; 5/3/10; 5/6/10; 5/8/10; 5/10/10);

4. "Oral Argument before DCCA," including oral argument (2.0 total claimed hours for 5/1/10);

5. "Preparation of Response to *en banc* Petition," including receiving and reviewing *en banc* petition, reviewing Loney's motion to supplement *en banc* petition, making an outline for the *en banc* response, working on *en banc* response, completing first draft of *en banc* response and proofreading *en banc* response and preparing it for filing (14.35 total claimed hours for 10/7/10; 10/19/10; 10/23/10; 10/25/10; 10/26/10; 10/28/10; 11/1/10; 11/2/10).

We note that the fee request stated that Legal Aid had exercised "billing judgment" and that the request "reflects substantial reductions" by excluding certain items that could well have been included: time spent by paralegals and law students at Legal Aid,[22] and time spent communicating with the client, with counsel for the Landlord and with the Commission. The fee request excluded in its entirety the legal work done on the Tenants' cross-appeal challenging the

---

[22] 14 DCMR § 3825.5 provides that fees may be awarded for services by "law clerks, paralegals, or law students, who worked on the petition under the supervision of an attorney."

Commission's attorney's fee award, including time spent in consultation with attorneys at Jenner & Block, the Tenants' counsel in this appeal. The Commission either overlooked that the fee request had already been discounted or gave it no weight even though we have commented on the importance that counsel exercise such billing judgment before a fee request is presented. *District of Columbia v. Hunt*, 525 A.2d 1015, 1016 (D.C. 1987) [cited by Commission in *Hampton Court Tenants' Ass'n*, CI 20,176 at 6.]. This is a fundamental flaw in the manner in which the Commission evaluated the Tenants' fee request.[23]

Of the hours that were submitted, the Commission reduced Becker's total of 53.95 hours claimed for work done on the first appeal to this court to 41.86 hours, and reduced her total of 14.35[24] claimed hours for work on the opposition to the Landlord's rehearing en banc petition to 8.11 hours. The Commission gave several reasons, none of which we find justified, for reducing Becker's claimed hours for appellate work. For example, because Becker did not participate in the original

[23] The Commission took note of the fact that the fee request did not bill for time spent by paralegals but took Becker to task for spending 15 minutes "explain[ing] to paralegal how to fill in citations to the record from record on file" and for herself spending time on tasks that the Commission thought should have been performed by paralegals.

[24] The Commission first corrected the petition's faulty addition so that the number of hours was adjusted to 9.85 claimed for opposing the en banc petition. So the actual reduction was 1.7 hours.

administrative proceedings she had to spend time familiarizing herself with the case for appeal; 4.5 hours were claimed for this preparation.[25] We believe that the Commission abused its discretion in reducing the claimed hours. First, it is not unusual that a different attorney will represent a client on appeal. Indeed, it is a recognition of the different skills and experience required for effective appellate practice before a court. A competent and conscientious attorney must become familiar with the record of the proceedings for which appeal is being taken—the court expects it. Although the Commission did not question Becker's need to prepare, it assumed, without substantiation, that she had ready access to all the materials necessary for appeal and that a visit to the court to review the record should not have been necessary because Legal Aid already had all of the necessary documents. Puzzlingly, it then reduced by ten percent (15 minutes) the time claimed for the review of records at the court in what can only be described as an

---

[25] Becker's affidavit read, with respect to these entries:

> 2/23/09 Read decisions below and brief of Housing Provider. Began to create outline of claims on appeal and parties' respective position on each claim. 2 hours.

> 2/24/09 Completed outline of claims and arguments. 1 hour.

> 2/27/09 Visited clerk's office at Court of Appeals to review record on appeal. 1.5 hours.

arbitrary cut without a basis in the rationale questioning the time expenditure's validity.

Second, the attorney's time entries were sufficiently descriptive and precise "to make an independent determination whether or not the hours claimed are justified." This is not a case where the fee applicant has provided billing entries which cover 30 or 40 hours in a single entry and that contain only basic descriptions of the tasks performed. *Cf. Hampton Courts*, 599 A.2d at 1117 n.12. (single entry claimed 40 hours of compensation for "Research for Appellant's Brief of Motion for Summary Reversal" and was simply dated "February 21-17 [sic]"; entry for period from March 30 to April 8 covered 30 hours for drafting brief and three motions, without any further detail as to tasks performed). Here, the attorney broke down her time entries into short segments, with descriptions that provide enough information to justify that time. For instance, Becker's time entries on two different days of "[w]orked on first draft of brief" cover only 4.5 hours and 2 hours; her entries on two other days for "[r]evised first draft. Wrote new Part IV" and "revised and sent new draft to [outside pro bono attorney for review]" cover 4 hours and 2.25 hours; her entry of "[c]reated outline for oral argument" was for 1 hour. The descriptions adequately explained how the lawyer spent discrete amounts of time on identified dates. We are at a complete loss to

understand the Commission's remarks that time entries were "vaguely or generally described." The court has no difficulty grasping the nature and necessity of the legal work involved.

The Commission found, however, that descriptions for tasks such as "[b]egan to create outline" and "completed outline" were "vaguely or generically described" because the "terms 'began' and 'completed' do not by themselves suggest the activities engaged in for the claimed time." We can understand perfectly that "began" signifies the initiation of a task, and that "completed" signifies that it has been accomplished. But those were not the only words in the fee request entries, rather in its order the Commission does not quote the full descriptions in Becker's affidavit which identified the nature of the work that was begun or completed. We are similarly puzzled by the Commission's objection to the entries for brief writing as "so vaguely or generically described that the Commission was unable to determine whether the hours claimed were in fact reasonably expended, or were excessive or unnecessary."[26] The Commission

---

[26] Becker's affidavit read, with respect to these entries:

> 3/1/09 Worked on brief (statement of facts). 2.2 hours.

(continued . . .)

singled out "worked on brief (statement of facts)" and "worked on first draft of brief" as too vague to support the "reasonableness" of the time claimed, apparently because the Commission thought that in light of the work Legal Aid had already done before the Commission and the Commission's own order supporting the Tenants, writing the brief should have been a straightforward affair. But even if a party is defending the order appealed, an appellate brief has to conform to court

---

(. . . continued)

3/4/09 Worked on first draft of brief. 4.5 hours.

3/5/09 Worked on first draft of brief. 2 hours.

3/6/09 Completed first draft and sent to D. Reiser for review. 1.5 hours.

3/10/09 Revised first draft. Wrote new part IV. 4 hours.

3/12/09 Revised first draft and sent new draft to D. Reiser. 2.25 hours.

3/13/09 Discussed next draft with D. Reiser. .75 hours.

3/18/09 Revised second draft. Began filling in citations. 1.75 hours.

Explained to paralegal how to fill in citations to the record from record on file with the Court of Appeals. .25 hours.

3/20/09 Inputted final proofreading, bluebooking, and stylistic edits on brief. 3 hours.

requirements and is targeted to an appellate panel; it is not simply a repetition of what has been submitted in the previous forum.[27]

With respect to the other two attorneys who worked on the appeal, Angel claimed 2.5 hours for "moot court," which the Commission reduced, by 15 minutes, to 2.25 hours. The Commission also reduced Robin-Vergeer's 4.5 claimed hours for work on the appeal, which included 2.5 hours of moot court participation and 2 hours for attending oral argument, by 1 hour and 15 minutes, to 3.25 hours.[28] In making these reductions, the Commission found that Angel and Robin-Vergeer had performed tasks that were "unreasonably duplicative" of Becker's work, such as mooting Becker in preparation for oral argument and Robin-Vergeer being present at oral argument as second chair.[29]

---

[27] Total time claimed for brief writing was 22.2 hours over a 20-day period, with a detailed accounting of the time spent and how it was spent on each day. This does not appear to us to be excessive in light of the four separate issues raised by the Landlord's petition for review to which the Tenants had to respond. The court eventually disposed of the case deciding only one of the issues, but Legal Aid would have run afoul of its professional responsibilities had it not made a full response on the Tenants' behalf.

[28] The Commission did not decrease the 1.5 hours Robin-Vergeer claimed for working on the opposition to the petition for rehearing en banc.

[29] The Commission allowed only 15 minutes of oral argument time to Becker and Robin-Vergeer, relying on this court's Internal Operating Procedures which provide that "[u]nless the court orders otherwise, each side will be allowed

(continued . . .)

The hours claimed were neither unnecessary, excessive, or duplicative. There is no support for the Commission's finding that the hours claimed for preparation for oral argument were excessive in this case,[30] or that having a panel of two attorneys during a moot court session is unreasonably duplicative in light of the fact that argument before this court is presented to an appellate panel of three judges. We expect that attorneys who appear before the court will spend time reviewing the record, researching the law in depth, and crafting arguments that are clear and concise. Mooting and other forms of oral argument preparation are

---

(. . . continued)
15 minutes for argument in cases on the regular calendar. . . ." District of Columbia Court of Appeals, *Internal Operating Procedures* pt. VI. A, at 5 (2014). Anyone familiar with appellate practice before this court knows that this is a guideline, not a guillotine. In any event, even if counsel for a party is allocated fifteen minutes at the outset, the court often has questions that prolong the argument, counsel remains in the courtroom while the other side makes its presentation and there may be some time before and after oral argument that are a natural part of the process of gathering in the courtroom and leaving the court. Therefore, the fifteen minute limit was arbitrary. The court's records show that, in fact, oral argument on the first appeal lasted 1 hour, 18 minutes and 47 seconds. Entries of two hours for each of two attorneys to attend oral argument (one presenting the argument, the other as second chair) are hardly excessive and should not have been reduced.

[30] Oral argument was initially scheduled for ten months after the Tenants' brief had been filed. As the fee petition explained, because oral argument was postponed for three months due to weather, there was a second round of preparation for oral argument. We note that the second round of preparation took significantly less time than the first.

widely recommended and the court endorses them, as effective oral argument is not only a part of zealous representation but also a benefit to the court. We also expect that attorneys will proofread and verify the citations in the written work that they submit to this court.[31] In sum, we conclude that the Commission erred in its determination that the proffered explanations were vague or that the time spent on the identified tasks was unnecessary, excessive or duplicative. Legal Aid attorneys expended a reasonable number of hours preparing and arguing the case in the first appeal and the time records were not duplicative. The fact that some of the Commission's reductions were quite small—trivial really—only points out the inordinate amount of lawyer and judge time spent on this fee request for very little yield. A review for "reasonableness" is not *carte blanche* for micromanaging the practice of lawyers the court or agency has no reason to believe are padding their hours.

---

[31] The Commission thought that Becker unreasonably spent time performing work that paralegals, law students, or clerks typically performed, such as "[f]illing in citations," "[p]roofreading" and "[b]luebooking" and that oral argument preparation for a total of 13 hours was excessive for Becker's level of experience. Appellate judges are acutely aware of the time required, even with the assistance of competent law clerks, in ensuring that the court's work product is accurate and free from technical errors. It is reasonable that lawyers' time would reflect a similarly punctilious approach to their appellate briefs.

# III. CONCLUSION

For the foregoing reasons, the Commission's fee award is reversed.  We hold that the lodestar amount is to be calculated as follows:  the hourly rates should accord with the Laffey Matrix, which results in a rate of:  (1) $420 for Angel's work on the first appeal; (2) $420 for Robin-Vergeer's work on the first appeal, and $475 for her work opposing the Landlord's petition for rehearing en banc petition; (3) $335 for Becker's work on the first appeal, $420 for her work opposing the en banc rehearing petition, and $435 for her work on the remand proceedings before the Commission;[32] and (4) $495 for Keeney's work on the remand proceedings.  The hours the Tenants presented for work performed in connection with the first appeal, which are reasonable, are (a) 2.5 hours for Angel; (b) 4.5 hours for Robin-Vergeer's work on the appeal, and 1.5 hours for her work opposing the en banc rehearing petition, and (c) 53.95 hours for Becker's work on the appeal, and 9.85 hours for her work opposing the en banc rehearing petition. With respect to Becker and Keeney's work on remand before the Commission, a

---

[32]  The Laffey-derived hourly rate of $335 for Becker's services rendered during the first appeal is not in dispute.

total of 10.83 hours (7.08 for Becker and 3.75 for Keeney)[33] shall be awarded at the Laffey-derived rates we have indicated.  Accordingly, we hereby award a total of $30,798.80 in attorney's fees to Legal Aid, which is the sum of fees for work performed in connection with the first appeal ($25,862.75) and on remand before the Commission ($4,936.05).  *See Loney*, 11 A.3d at 759 ("[D.C. Code § 42-3509.02] does not specify that each entity can only award attorney's fees for work done before it; instead[,] it indicates that the listed entities [Rent Administrator, Rental Housing Commission, or a court of competent jurisdiction] can grant attorney's fees 'for any action under this chapter.'").

*So ordered.*[34]


FISHER, *Associate Judge*, dissenting in part:  In cases like this, "the agency decision with respect to the award of attorney's fees is presumed to be correct, and thus the [Tenants] Association bears the burden of demonstrating that the [Rental Housing Commission] abused its discretion in reducing either compensable hours

[33] The Commission's hours calculation for work on remand following the first appeal is not challenged by the Tenants and we adopt it here.

[34] Tenants have indicated that they intend to ask for attorney's fees for legal work rendered in connection with this second appeal.  Once the appeal is finalized, they will be entitled to do so if, as is the case now, they are the prevailing party.

or hourly rates." *Hampton Courts Tenants Ass'n v. District of Columbia Rental Hous. Comm'n*, 599 A.2d 1113, 1116 (D.C. 1991). I cannot agree that the Commission abused its discretion by determining that hourly rates of $335 to $395 would provide reasonable compensation to the tenants' attorneys.[1]

The Commission engaged in careful analysis, heeding our previous statement that the *Laffey* Matrix is "one legitimate means of calculating attorneys' fees in those cases, such as this, where a prevailing party is statutorily entitled to attorney's fees." *Lively v. Flexible Packaging Ass'n*, 930 A.2d 984, 990 (D.C. 2007). But we have made it clear that the matrix "is merely a starting point." *Id.* *See also Covington v. District of Columbia*, 57 F.3d 1101, 1109 (D.C. Cir. 1995) ("a useful starting point"). I would not go further, as the majority does, and treat the *Laffey* rates as both "presumptively reasonable," Majority Opinion at 21, and nearly irrebuttable. See Majority Opinion at 27 ("[I]n most cases [the *Laffey* Matrix] will be the best place to end . . . .").

Although the majority relies heavily upon *Covington* and other decisions from the District of Columbia Circuit, that court does not seem so rigid. In a

---

[1] I concur in part II. D of Judge Ruiz's opinion with regard to the number of hours reasonably expended. Good appellate advocacy takes time.

recent case involving an award of attorneys' fees as indemnification, the appellants faulted the District Court "for opting not to apply the *Laffey* matrix." The court acknowledged that "[w]e certainly have approved of the *Laffey* matrix as *a useful tool* in assessing reasonableness in some circumstances," *Armenian Assembly of Am. v. Cafesjian*, 758 F.3d 265, 281 (D.C. Cir. 2014) (emphasis added), but concluded that appellants' "contention misses the mark. . . . [The trial court] was not required to adhere to any particular method in" determining that the award of fees was reasonable. *Id*. at 281, 282.

In my view, the Commission properly looked to rates charged by attorneys doing similar work in the specialized field of rent control and rental housing. Of course, most of the work for which fees were claimed was performed in this court. But there is no basis in the record for concluding that attorneys who litigate before us, in that field or any other, customarily make more than $335 to $395 per hour. Indeed, a large number of our most talented and experienced advocates are appointed under the CJA and CCAN programs and are paid $90 per hour. D.C. Code § 11-2604 (a) (2012 Repl.) (representation of indigents in criminal cases); D.C. Code § 16-2326.01 (2012 Repl.) (compensation of attorneys in neglect and termination of parental rights proceedings). I am not suggesting that $90 per

hour would be reasonable compensation here, but this comparison does add useful perspective to our inquiry.

The majority appeals to judicial efficiency and points to the Supreme Court's admonition that "[a] request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). There is, however, a better means of reaching those goals—by affording the deference we customarily give to a trial court or an agency in such matters. In *Lively* we emphasized our limited scope of review with respect to an award of attorneys' fees, noting that "it requires a very strong showing of abuse of discretion to set aside the decision of the trial court." 930 A.2d at 988. In this procedural setting, we owe at least equal deference to the Commission. The majority instead has conducted what amounts to *de novo* review.